CHARLES M. STEPHEN *v.* JOHN SMITH, WILLIAM R. LEE,
AND JOHN S. ELDRIDGE.

*Right of railroad company to remove passengers from their cars.*

The right of the managers of a railroad to remove from their cars a passenger who refuses to pay his fare is controlled by the provisions of sec. 52 of ch. 26 of the Compiled Statutes.  They can do so only at one of their usual stopping places.

The Vermont and Canada Railroad Company, and persons having control of their railroad as trustees, are subject to the provisions and restrictions of the above section.

TRESPASS.  The injury complained of was that the defendants had caused the plaintiff to be wrongfully removed from and put

out of the cars in which he was riding as a passenger on the Vermont and Canada Railroad. The cause was tried by jury at the June Term, 1856, — PECK, J., presiding.

On the trial the plaintiff proved that the defendants, at the time mentioned in the declaration, had the control of, and were running the railroad cars on the Vermont and Canada Railroad, as trustees, for the purpose of transporting passengers; and that the plaintiff went on board one of said cars at the Swanton Falls depot, as a passenger, for the purpose of being carried from there to Rouse's Point; that the defendants carried him from said depot towards Rouse's Point from three to four miles, and then stopped and put him out of the cars at a place where said railroad company had no station or usual stopping place, and from a half mile to a mile from any dwelling, and a greater distance from the next station or usual stopping place than from the Swanton Falls depot.

The testimony showed that the plaintiff had not purchased a ticket for his passage, and that the defendants claimed of him five cents more than the price of a ticket, and that it was in consequence of some difficulty in reference to his paying his fare that the cars were stopped and the plaintiff removed from them. The plaintiff introduced testimony tending to show that he offered to pay his fare to the conductor; but the defendants' testimony tended to show that the plaintiff refused to do so; and the defendants claimed that in consequence of such refusal their conductor, under the instructions of the defendants, was justified in removing the plaintiff from the cars at the place he did.

The court decided and instructed the jury that if the plaintiff had neglected and refused to purchase a ticket, and had neglected and refused to pay the usual fare, the defendants had no legal right to cause him to be put out of the cars at any place except at a station or usual stopping place, and that such neglect and refusal of the plaintiff was no defense to this action, but that it was evidence in mitigation of damages.

To this ruling and charge of the court the defendants excepted. The jury returned a verdict for the plaintiff.

*B. H. & E. M. Smalley,* for the defendants.

12

I. The defendants, being passenger carriers for hire, had the right at common law to put the plaintiff out of their cars at any suitable place if he had no ticket and refused to pay the usual fare.

II. The act of 1849, (Comp. Stat. 202, sec. 52,) does not abridge the defendants' common law right. The legislature of Vermont had not the constitutional right in 1849 to pass an act which abridged the rights and privileges granted to the Vermont and Canada Railroad Company under their act of incorporation passed in 1845.

III. The fifty-second section of the general railroad law is not restrictive in its terms ; and the legislature by giving to the corporation and their agents the power to put passengers out of their cars at a station or usual stopping place, if they refuse to pay their fare, do not necessarily or even by implication take away the common law rights which the corporation have as passenger carriers.

*Aldis & Burt,* for the plaintiff.

I. The only question in the case is, whether a railroad conductor may put out of the cars *at any other than an* " *usual stopping place* " a passenger who refuses to pay his fare. The provision in the Comp. Stat., chap. 26, sec. 52, (p. 202,) seems conclusive to show that he may not. This statute is restrictive of the common law right. Otherwise it is senseless and superfluous legislation.

II. If the constitutional power of the state thus to regulate the transportation of passengers is questioned, we reply that this is a mere police regulation which the state has the unquestionable right to establish ; 1 Shelford on Railways 104, in note ; *Lyman* v. *Bost. and Worc. R. Co.,* 4 Cushing 288 ; *Thorpe* v. *Rut. and Bur. R. Co.,* 27 Vt. 140.

By the charter of the Vermont and Canada Railroad Company the state has the power to repeal, annul or alter it, a power which would clearly embrace this case ; 6 Cushing 424 ; 1 Shelford on Railways 108 – 9, &c.; *Nelson* v. *Vt. and Can. R. Co.,* 26 Vt. 717.

The opinion of the court was delivered by

Isham, J.   The plaintiff has brought this action to recover damages for being forcibly removed from the cars of the Vermont and Canada Railroad Company, at a place other than one of their stations or usual stopping places.   It appears from the case that the plaintiff entered the cars at Swanton Falls in one of their regular passenger trains for the purpose of going to Rouse's Point. The defendants, under the charge of the court, are entitled to the benefit of the fact that the plaintiff refused to pay the fare usually charged between those places, and was ejected from the cars for that reason only.   The right and duty of the defendants, in running that road, to establish and enforce reasonable regulations for the government of the line, has been frequently recognized by the courts in this country.   The safety and security of the traveling public, as well as the interest of the railroad itself, require that that right and duty exist and be enforced.   Upon that ground it has been held that the defendants and their servants may not only exclude those who refuse to pay their fare or to comply with such reasonable regulations as are made for their government, but they may also rightfully inquire into the habits or motives of those who claim the right of passage.   These general principles are sustained by the cases of *Jenks* v. *Coleman*, 2 Sumner 221, and *Commonwealth* v. *Power*, 7 Met. 596.   The discrimination in fare which is made by this company when tickets are purchased at the several stations, or when paid to the conductor in the cars, is reasonable, as affording proper checks upon its accounting officers, and which they have a right to enforce.   While the law requires of the company the adoption of such regulations as are necessary for the safety and convenience of passengers in their trains, they have also the right to adopt such reasonable regulations as are necessary for their own security; and those regulations are to be mutually observed.   If they are not complied with by passengers, the company may not only refuse them admission within the cars, but if they are within they may remove them.   In the case of *Coffin* v. *Braithwarte*, a note of which is found in Parson's Mer. Law 206, note (1,) on the subject of carriers of freight and passengers, it seems to have been lately held in England by Rolfe B., that " a carrier having received a pickpocket as a passenger on board his vessel, and taken his fare, he cannot put him on shore *at any intermediate*

*place,* so long as he is not guilty of any impropriety." The right to put him on shore at one of their stopping places for that cause seems to have been recognized ; and for any impropriety of conduct it would seem to be implied that the right could be exercised at other places. But whatever may be the right at common law, the statute in this state, 202, sec. 52, must control the determination of this case. By that statute it is provided that "if any passenger shall refuse to pay his fare, or shall be disorderly or drunk, or refuse to comply with all the reasonable regulations of the corporation for the government of the conduct of passengers, it shall be lawful for the conductor of the train and the servants of the corporation *to put him out of the cars at any usual stopping place the conductor may elect.*" The reason for putting the plaintiff out of the cars, in this case, was obviously sufficient. The statute expressly provides that for a refusal to pay his fare the passenger may be removed; but the exercise of that right is restricted to some one of their stations or usual stopping places. Any other construction would render that entire section of the railroad act unmeaning legislation. It is true the statute does not expressly negative the right or forbid the exercise of that power at any other place on the line of the road, but such is its effect by implication. It impliedly negatives the exercise of that right at any other place.

That the defendants in running this road are subject to the provisions of that act we have no doubt on general principles. But as the charter of the company, under the authority of which the defendants are in the use of these franchises, may be repealed or modified by subsequent legislation, we think it quite obvious that they are subject to the provisions of this general law. The power is in the hands of the company to protect themselves from any abuse of that right by passengers in requiring payment of fare before they are permitted to enter the cars.

The judgment of the county court must be affirmed.