JOHN O'BRIEN vs. BOSTON AND WORCESTER RAILROAD COMPANY & another.

A passenger who, for nonpayment of his fare, has been ejected from a railroad car, at a place where there is no station, cannot, by climbing upon the train again before it starts, and tendering the fare, obtain a right to be carried by it.

A regulation of a railroad corporation, that conductors shall eject passengers refusing to pay their fare, and not afterwards accept their fare if offered after the cars have stopped, is within the authority conferred upon such corporations by the Rev. Sts. c. 39, § 83; and may be given in evidence in defence of an action against them and their conductor for ejecting a passenger for nonpayment of fare.

ACTION OF TORT against a railroad corporation and their conductor for ejecting the plaintiff from their cars.

At the trial in the court of common pleas in Middlesex at December term 1858, before *Sanger*, J., the evidence tended to show that the plaintiff bought at Cordaville a passenger's ticket to Brighton, and also a return ticket from Brighton to Cordaville; that he went to Brighton on the train, and thence to Boston; that in the afternoon of the same day he entered the defendants' cars at Boston as a passenger, intending to go to Cordaville, and took his seat; that before the train reached Brighton the conductor, in the due course of his duty, in taking the tickets of the passengers and collecting their fares, came to the plaintiff, who up to this time had conducted himself properly, and asked him for his ticket; that the plaintiff handed him the return ticket which he had purchased as above stated, and the conductor said that it was not good. The testimony of what followed was conflicting. The plaintiff contended that the evidence showed that when the conductor objected to the ticket, the plaintiff offered to pay his fare, either from Boston to Brighton, or the whole distance from Boston to Cordaville, before the bell was rung to stop the cars, or any attempt was made to eject him from them; that he made the same offer after the bell was rung, and before he was ejected, but that the conductor refused to receive the fare, and forcibly ejected him. The defendants contended that the evidence showed that the conductor demanded the fare either from Boston to Brighton, or, if the plaintiff preferred so to pay, from Boston to Cordaville; that the plaintiff

at first refused to pay anything; that upon his persisting in his refusal to pay the fare, the conductor rang the bell and stopped the cars; that after the bell had been rung for stopping the cars, and before and after the cars were stopped, the plaintiff offered to pay the demanded fare, but the conductor refused to receive it, and forcibly ejected the plaintiff from the car and put him down on the railroad track. It appeared that the train had been stopped only for the purpose of ejecting the plaintiff; that the conductor gave the signal for the cars to start, and proceeded in his duty of collecting the fares, and the cars started on; that the plaintiff went to the rear car and got upon it; that the conductor was immediately informed that the plaintiff had got into that car, and at once went to it, and although the plaintiff, before any attempt was made to stop the cars a second time, offered to pay whatever fare the conductor should demand, the conductor refused to receive it, stopped the cars and forcibly ejected the plaintiff a second time.

The defendants offered to show that, by the regulations of the corporation, conductors were to eject persons who refused to pay their fare, and, after such ejection, were not to accept their fare at that time, if offered after the cars had been stopped. But the judge rejected the evidence.

The judge instructed the jury that as there was no question but that the plaintiff was obliged to pay his fare from Boston to Brighton, the conductor, after demanding the fare, and waiting a reasonable time for the plaintiff to pay, had a right, on the plaintiff's refusal to pay, to ring the bell to stop the cars for the purpose of ejecting him; that after the bell was thus rung any offer or tender of the fare, not accepted by the conductor, was made too late; and that, notwithstanding such offer or tender of fare, the conductor had a right to stop the cars and eject the plaintiff therefrom, using no more force than was necessary for the purpose.

In regard to the second ejection, the jury were instructed that the agents of the corporation might, using only such force as was necessary, eject from their cars any passenger who wrongly refused to pay his fare, which was properly demandable and

which had been demanded in a proper manner; that after so ejecting him they could stay by, if they pleased, and prevent him from entering the cars again at that time and place; that the passenger thus properly ejected was not thereby forever incapacitated from riding in the cars of the corporation, but might, if he conducted himself properly and paid his fare or tendered it seasonably, ride in a subsequent train on another day, or on the same day; or if the ejection was near a station, and if, after the ejection, for any reason, the train, having reached that station, was delayed there until the passenger came up, he might enter the cars there, and be carried, if he conducted himself properly; and so, if after the ejection the cars should move on and for any reason become stationary, and the ejected passenger should overtake them and enter them without objection, he might continue therein if he conducted himself properly, and paid his fare, or seasonably offered to pay it; that it might be difficult to fix the point of time as a matter of fact, how soon after the ejection the ejected passenger might re-enter the cars with the right and privilege of ordinary passengers; but it would be when the transaction of the ejection was completely terminated; that when that ended, a new state of things began, and it was for the jury to find upon all the proof whether the transaction of the ejection was terminated before the plaintiff re-entered the cars; that unless it was so terminated, the plaintiff could not recover any damages for the second ejection, if they should find the first ejection to have been lawfully made; and if it was so terminated, (and the burden of proof was upon the plaintiff to establish the fact by a preponderance of the proof,) and the plaintiff entered the cars without objection, although without any express permission, and although it was immediately after the ejection, and on the same train, and not at any station or customary stopping place, he was rightfully there, and, conducting himself properly, and paying his fare, or seasonably offering to pay his fare, he had a right to be carried, and could recover damages for his ejection.

The jury found the first ejection justifiable, the second unjustifiable, and rendered a verdict for the plaintiff for $150. The defendants alleged exceptions.

O'Brien *v.* Boston and Worcester Railroad Company & another.

*G. S. Hale,* for the defendants, cited Rev. Sts. *c.* 39, § 83; *Sts.* 1831, *c.* 72, §§ 5, 6; 1849, *c.* 191, § 2; 1853, *c.* 414, § 4; 1854, *c.* 23; *Six Carpenters' case,* 1 Smith's Lead. Cas. (5th Amer. ed.) 216 & notes; *Lovett* v. *Hobbs,* 2 Show. 128; *Edwards* v. *Sherratt,* 1 East, 604; *Johnson* v. *Midland Railway,* 4 Exch. 367, and 6 Railw. Cas. 61; *Cheney* v. *Boston & Maine Railroad,* 11 Met. 121; *Loring* v. *Aborn,* 11 Law Reporter, 461, and 4 Cush. 608; *Commonwealth* v. *Collins,* 2 Cush. 556; *Waldo County* v. *Moore,* 33 Maine, 511; *Murch* v. *Concord Railroad,* 9 Foster, 9; *People* v. *Jillson,* 3 Parker C. C. 234; *Hibbard* v. *New York & Erie Railroad,* 15 N. Y. 455; Angell on Carriers, §§ 524, 527 *a*; Chitty & Temple on Carriers, 240 *& seq.*

*A. B. Underwood,* for the plaintiff, cited *Commonwealth* v. *Power,* 7 Met. 596; *Hall* v. *Power,* 12 Met. 482; *Jencks* v. *Coleman,* 2 Sumner, 227; *Markham* v. *Brown,* 8 N. H. 523; *State* v. *Overton,* 4 Zab. 435; Angell on Carriers, §§ 525, 530, 609; Pierce on Railroads, 248; *Merrihew* v. *Milwaukee & Mississippi Railroad,* 5 Amer. Law Reg. 364.

BIGELOW, J. The correctness of the instructions given to the jury in this case can be readily ascertained by considering the nature of the contract entered into between the plaintiff and the defendants, and the respective rights and duties of the parties under it. On entering the cars of the defendants at Boston, the plaintiff had a right to be carried thence to his place of destination in that train on paying the usual rate of fare. This fare he was bound to pay, according to the regulations of the company, or on a reasonable demand being made therefor; if he failed to do so, then his rights under the contract ceased; he had forfeited them by his own act; and having himself first broken the contract, he could not insist on its fulfilment by the defendants. This is the rule of common law. It is also expressly enacted in *St.* 1849, *c.* 191, § 2, that no person, who shall not upon demand first pay the established toll or fare, shall be entitled to be transported over a railroad. The defendants therefore were not bound to transport him farther, but were justified in ejecting him from the cars by the use of all lawful and proper means. Angell on Carriers, §§ 525, 609. Redfield on Railways, 26, 261

*Stephen* v. *Smith*, 29 Verm. 160.   Nor could he regain his right to ask of the defendants to perform their contract by his offer to pay the fare after his ejection.   They were not bound to accept performance after a breach.   The right to demand the complete execution of the contract by the defendants was defeated by the refusal of the plaintiff to do that which was either a condition precedent or a concurrent consideration on his part, and the non-performance of which absolved the defendants of all obligation to fulfil the contract.   After being rightfully expelled from the train, he could not again enter the same cars and require the defendants to perform the same contract which he had previously broken.   The right to refuse to transport the plaintiff farther, and to eject him from the train, would be an idle and useless exercise of legal authority, if the party, who had hitherto refused to perform the contract by paying his fare when duly demanded, could immediately re-enter the cars and claim the fulfilment of the original contract by the defendants.   Besides, the defendants are not bound to receive passengers at any part of their route, but only at the regular stations or appointed places on the line of the road, established by them at reasonable distances for the proper accommodation of the public.   Angell on Carriers, § 527 *a.   Murch* v. *Concord Railroad,* 9 Foster, 39.   The plaintiff had therefore no right to enter the cars at the place where the train was stopped for the purpose of ejecting him.   A person who had committed no breach of contract could not claim any such right; *a fortiori* the plaintiff could not.   It follows that, on the facts stated in the exceptions, the plaintiff proved no just claim for damages against the defendants, and the instructions given to the jury, under which the verdict was rendered, were clearly erroneous.

The court also erred in rejecting the evidence of the regulations established by the defendants concerning passengers who refused to pay their fare.   The right to establish all needful and proper regulations is vested in the defendants by law. Rev. Sts. *c.* 39, § 83.   *Commonwealth* v. *Power,* 7 Met. 602. And they should have been permitted to prove them as part of their justification.                    *Exceptions sustained.*