STATE *versus* THOMAS O. GOOLD.

It is a reasonable regulation for a railroad corporation to fix rates of fare by a tariff posted on their stations, and to allow a uniform discount on these rates to those who purchase tickets before entering the cars.

A passenger, who has thus neglected to purchase a ticket, has no right to claim the discount, whether he had knowledge of the regulation or not; and, if he refuses to pay to the conductor the fare established by the tariff, the conductor is justified in compelling him to leave the train at a regular station.

ON EXCEPTIONS from *Nisi Prius*, DICKERSON, J., presiding.

INDICTMENT FOR ASSAULT AND BATTERY.

The defendant was a conductor on the Grand Trunk Railroad, and, while acting in that capacity, forcibly expelled a passenger from the train, which was the assault complained of.

Evidence, by the defence, showed that the company had established certain passenger rates, being the sums which were required to be paid, when payment of fares was made to the conductors in the cars; *that these rates were the regular rates;* were published in tariff tables, conspicuously posted in the stations of the company, and that the conductors were required, by the regulations of the company, to collect these rates of all persons, who paid their fares in the trains; but that, by the same regulations, a discount of ten cents was made from these rates as the rate for persons who purchased tickets at the ticket offices, before entering the trains, and that large painted sign-boards were placed conspicuously in the stations, on which were painted in large letters, a notice that such discount would be made.

The passenger, upon whom the alleged assault was made, entered the train, at a station where it was known to him that a ticket office was kept, and where a tariff table and sign-board were posted and placed, as above stated, without having purchased a ticket, and, before reaching the first or

second station after starting, was required by the defendant, who was in charge of the train as conductor, to pay his fare according to the rates established by the company to be paid in the cars, which he refused to do, but offered to the defendant the sum required at the ticket office. The defendant refused to receive it, and, upon the continued refusal of the passenger to pay the sum demanded, forcibly removed the passenger from the cars, at a regular station, where the cars were then stopping.

The presiding Judge instructed the jury, that if the officers of a railroad company, having a regulation requiring a larger sum to be paid for a passenger fare, when paid in the car, than when paid for a ticket at the ticket office, would protect themselves against liability for ejecting a passenger, who, being without a ticket, refused to pay the larger sum, it must appear in evidence that the passenger had knowledge of such regulation before he entered the train; that the defendant could not justify his conduct in this case, unless it was shown in evidence, to the satisfaction of the jury, that the regulation, under which the defendant acted, was made known to the passenger in question before he entered the train; that a railroad passenger has a right to presume that the amount to be required for his fare will be the same, whether paid at the ticket office or in the car, — the transportation of the passenger and the rate to be paid therefor being matter of contract.

He further instructed the jury, that a regulation, such as that adopted by this company, by which the larger rate was required to be paid in the cars, with a discount to those purchasing tickets at the office, was only another method to secure the payment of a higher rate of fare if paid in the cars, than when paid at the ticket office, and did not differ in substance from a regulation by which the lower sum should be required to be paid at the ticket office, with an additional sum when paid in the cars; that the difference in form was immaterial, and that, in either of such cases, if a passenger without knowledge of such regulation, entered a train, and

offered for his fare the sum required to be paid at the ticket office, a conductor would not be justified in ejecting him from the train, upon his refusal to pay the larger sum.

The jury found the defendant guilty, and he excepted.

*Barnes*, for the defendant.

*Peters, Attorney General, contra.*

KENT, J.—Railroad corp orations have an undoubted right to fix and determine the ra tes of fare on their roads, within the limits specified in their charters or by existing laws. They have also an undoubted right to make reasonable regulations as to the time, place and mode of collecting the same from passengers. They may reasonably require payment before the arrival of the train at the station where the passenger is to leave the cars. We see no reason to question their right to require payment in advance, to be made at a convenient office, and at convenient times; certainly, where there is no positive interdict to entering the cars without a ticket, as in this case. There is neither hardship nor unfairness toward the passenger, who, ordinarily, can pay his fare and procure his ticket without trouble or delay, at the office. But, to the company, it is something more important than mere convenience that such regulations should be enforced. It is important in simplifying accounts. It is important to promote and secure safety, by allowing time to the conductor to attend to his proper duties on the train, and which would be often seriously interfered with if his time was taken up in collecting fares and exchanging money, and answering questions. It is highly important as a check against mistakes or fraud on the part of the conductors, and as a guard against imposition by those seeking a passage from one station to another without payment.

In the case at bar, no absolute rule of exclusion was established. It appears, from the statement of facts in evidence, that certain rates of fare were established by the company — that these rates were the regular rates, publish-

ed in the tariff tables, posted in the stations of the company. It was the rate thus established that the passenger in this case was requested to pay. But he says that he was not bound to pay the sum thus fixed, because, by the same rules and tariff, a discount of ten cents was made from the rates to those persons who 'purchased tickets at the office before entering the train, and that this, in fact, created two distinct and different rates for the same passage.

If this were so, we are not prepared to decide that it would be an unreasonable or illegal exercise of the power given to the corporation. Assuming that it is reasonable to require pre-payment and the production of a ticket, it would seem to be simply a relaxation of the rule, in favor of the passenger, to allow him to pass upon the payment of another rate, slightly advanced. If he neglected to avail himself of the opportunity offered to him to procure a ticket, at the lower rate, he can hardly complain that he is allowed to proceed in the train, on payment of the rate established for such cases, instead of being at once removed from the car.

In fact, however, in this case, but one rate was established, and that was the sum required in the cars. This was "the established fare," specified in our R. S., c. 51, § 47. A discount of ten cents was made on these rates, if a ticket was purchased before entering the train. What right had this passenger to claim this *discount* on the established rate? If he knew of the regulation, it was his carelessness or folly that led him to neglect this opportunity. If he did not know it, it was his misfortune. The company had done all that could reasonably be required of them, by posting the regulation conspicuously in the stations of the company. It would be an utterly impracticable rule to require that every passenger should be personally notified of its existence before entering the cars. Although it is not important in the view we take, yet one cannot help asking how this particular passenger persistently insisted on paying only "the sum required at the ticket office," if he did not know of the rule allowing the discount at the offices? But, if the

State *v.* Goold.

regulation was reasonable, and reasonable notice had been given of its existence, it is not necessary to prove actual knowledge of its existence on the part of the passenger before entering the cars. It was not a special and exceptional, but a general rule. If a passenger enters the car, without knowing anything of the rates of fare or of the rules in relation thereto, and without making any inquiries, he must be held to pay, as on an implied contract, according to the reasonable rates and rules of the company. He might as well claim exemption from the payment of *anything* for his passage, because he did not personally know that any rates, or what rates, were established, as to claim exemption from the rule which makes a distinction in rates, because he did not ascertain the fact before entering the train. The question is to be determined on the ground of reasonableness and power, and not on the ground of individual knowledge.

The conductor of a train is justified in compelling a passenger, who utterly refuses to pay his legal fare, to leave the car at a regular station. R. S., c. 51, § 47.

The principles before stated have been recognized and sanctioned in Vermont, in the case of *Stephen* v. *Smith*, 29 Verm., 160, and by the Court in New Hampshire, in the case of *Hilliard* v. *Goold*, 34 N. H., 230. See also Redfield on Railways, § 26; *Commonwealth* v. *Powers*, 7 Met., 596.

The decision of the questions involved in this case rest upon two general principles, well established, viz.— that it is the *duty* of the corporation to adopt such regulations as are required to secure the comfort and safety of passengers, and it is equally their *right* to adopt all reasonable rules for their own security and the orderly management of their business. The corporation is no more bound by the one than the passenger is by the other.

The rulings of the Judge were incorrect.

*Exceptions sustained. New trial granted.*

Appleton, C. J., Davis, Walton, Barrows and Danforth, JJ., concurred.