## L. B. D. REESE v. PENNSYLVANIA R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 8, 1889—Decided January 20, 1890.
[To be reported.]

1. A railroad company has power to make reasonable regulations, not only as to the amount of passenger fares, but also as to the time, place and mode of their payment; this includes the right to refuse to carry without the previous procurement of a ticket, or to charge a higher rate of fare to passengers without tickets, provided a reasonable opportunity to procure them before entering the train has been afforded.

2. A fortiori, a regulation requiring the payment by passengers neglecting to procure tickets of ten cents in addition to the regular fare, to be refunded on presentation at the ticket office of a check therefor, is valid, being neither unreasonable, oppressive, nor needlessly inconvenient to the traveler.

Statement of Facts.

3. Nor does a provision in such a regulation that it shall not be enforced as to passengers getting on trains at stations where no tickets are on sale, or when the presence of a large crowd upon a train renders it impossible for the conductor to collect the fares and tickets, if he takes time to issue such receipts to passengers without tickets, render the regulation unreasonable as not being general, fair and impartial.

4. The additional sum so to be paid by the passenger and afterwards refunded to him, is not a charge for transportation, within the meaning of a provision in the company's charter limiting such charges to a certain rate per mile; wherefore, the fact that the fare and such additional sum may exceed the authorized maximum charge for transportation, does not constitute a violation of the charter.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 250 October Term 1889, Sup. Ct.; court below, No. 127 January Term 1889, C. P. No. 2.

On October 31, 1888, L. B. D. Reese brought trespass against the Pennsylvania Railroad Company to recover damages for the alleged unlawful ejecting of the plaintiff from a passenger train of the defendant. Issue.

At the trial on September 17, 1889, the following facts were shown: About eleven o'clock on the evening of October 24, 1888, the plaintiff, in company with two friends, boarded a passenger train of the defendant company at East Liberty station, in the city of Pittsburgh, for the purpose of going to the Union station in said city. The testimony for the plaintiff tended to prove that they arrived at East Liberty station just as the train was about to start, and too late to get tickets; while witnesses for the defendant testified that the plaintiff and his companions were at the station some minutes before the train left. The ticket office at East Liberty was kept open the usual length of time prior to the departure of that train, and afforded all persons who were at the station before it started an opportunity to procure tickets.

The defendant company was incorporated by act of April 13, 1846, P. L. 312, § 21 of which provides that "in the transportation of passengers, no charge shall be made to exceed three cents per mile for through passengers, and three and one half cents per mile for way passengers."

After the train had started, the conductor called upon the

plaintiff for his ticket, when the plaintiff stated that he had none and tendered to the conductor the sum of fourteen cents in cash. The distance between the East Liberty and Union stations is four and one half miles, and the regular and uniform fare charged by the defendant between those points was fourteen cents, being at the rate of three cents a mile. The company, however, had a regulation requiring passengers without tickets to pay to the conductor, in addition to the regular fare of three cents per mile, the additional sum of ten cents. The amount so to be paid in excess of the regular fare was uniform in all cases, irrespective of the distance the passenger was traveling, and upon its payment the conductor was required to give to the passenger a memorandum or check, signed by the general passenger agent of the company, redeemable at ten cents on presentation at any ticket office of the company along its road. This memorandum is known as a "duplex ticket," the conductor being required to retain and forward to the auditor of passenger receipts a duplicate of each one issued. It is printed upon a form so arranged that the stations from and to which fare is collected can be indicated upon it by punch marks, and conductors are required to do this in all cases. Of this regulation, notice was given to the public by printed cards posted at the company's ticket offices. Two such notices were posted on the station house at East Liberty at and for some time prior to the date when the plaintiff took this train. They read as follows:

" An excess of ten cents will be charged on all fares paid on trains. Passengers paying such fares will be furnished by the conductors with a memorandum, upon presentation of which, at any ticket office of the Pennsylvania Railroad Division, the excess of ten cents will be refunded. Passengers are respectfully requested to purchase tickets at the regular ticket offices of the company, as far as practicable."

The following instructions to conductors respecting the enforcement of this regulation were issued by the company's division ticket agent on June 30, 1887, and were still in force on October 24, 1888:

" The following rules will, until further notice, govern the issue of duplex tickets on the Pittsburgh Division.

" The collection of excess must be omitted as follows:

1. When passage is taken from non-ticket stations; whether the destination is a ticket station, or a non-ticket station.

2. When passage is taken from a ticket station, the office of which being closed by authority, regardless of the passenger's destination.

3. When, on account of a large crowd, it is impossible to issue duplex tickets without losing cash fares, or leaving tickets in the hands of passengers.

4. In cases of small children traveling alone, and of sick, aged, or infirm persons, who have not money enough to pay the excess.

5. When excursion tickets are issued.

6. Omit the collection of excess in connection with New York & Chicago Limited Express extra fares ; and, also, when ordered, collections are made on second class and emigrant tickets.

" In all cases, except as above noted, conductors must courteously enforce the collection of excess, as prescribed in circular 160 ; and require the persons who refuse to pay it, to leave the train; and if necessary, without undue force or violence, eject them at the next station, as provided in the book of rules."

Acting under the regulation of the company respecting the payment of cash fares, the conductor refused to accept the fourteen cents tendered him by the plaintiff and demanded twenty-four cents. The plaintiff declined absolutely to pay more than fourteen cents, whereupon he was put off the train at Roup station.

The conductor of the train testified, for the defendant, that at the time of demanding twenty-four cents from the plaintiff, he explained to the latter that a duplex, redeemable at ten cents at any office of the company along the line, would be issued upon payment of the twenty-four cents. The plaintiff denied this and testified that he did not know that he would receive such a check, because he had no notice of the regulation and had never seen any of the printed placards notifying the public of it; and that he had previously ridden in trains of the defendant when no excess over the regular fare was exacted from him. He admitted, however, that he had heard of the regulation, had heard people complain of it, and had read of it in the newspapers :

Charge of Court below.

Q. You supposed when the conductor demanded that ten cents, that that was what it was ? A. I suppose so.

Q. You did not think they were demanding the ten cents for the purpose of keeping it as fare ? A. I don't know what they were demanding it for. I know they demanded it, and that is all there was of it. The conductor said nothing to me about getting any rebate; didn't tender me any slip ; didn't say anything to me about any regulation they had, but just simply demanded the twenty-four cents.

Q. You did not ask him anything about it ? A. I didn't.

At the conclusion of the testimony the court, EWING, P. J., charged the jury in part as follows :

Counsel for defendant requests the court to charge :

1. Under the uncontradicted evidence in this case, the regulation of the defendant was a reasonable one, and the plaintiff, who was insisting on riding in violation thereof, has no cause of action; and the verdict should be in favor of defendant.

Answer: Refused.[1]

3. The regulation of the defendant company requiring a passenger who gets on the train at a station where there is a ticket office and who neglects to obtain a ticket, to pay ten cents more than the regular ticket fare, and giving him a check for the ten cents which he can have cashed at any ticket office of the company, is a reasonable regulation and binding upon a passenger, and he has no right to ride upon the cars in contravention of that regulation.

Answer: This point is refused under the uncontradicted evidence and admissions in this case ; the fare demanded being in excess of the maximum rate which the railroad company by its charter is permitted to charge, the regulation is illegal and therefore unreasonable. The demand of the conductor that the plaintiff should pay twenty-four cents, or be put off the train, was a demand of that amount as fare.[2]

4. Where the travel is so great and the stops are so frequent that it is not reasonably practicable for the conductor to receive the passengers' fares on the train, and the company has provided a convenient ticket office which is open a reasonable length of time before the departure of trains, the company is not bound to receive a passenger's fare on the train ; and a regulation of

the company that specifies that his fare will only be received on the train when ten cents extra is paid, for which the passenger receives a refunding receipt, and which will be repaid by the company on presentation of the receipt at any ticket office, is a reasonable and valid regulation and binding upon passengers.

Answer: It is not necessary in this case to decide whether or not the railroad company has a right to make a regulation that it will not carry passengers who have no ticket. This company has not made such a regulation; and, having left it open to the public to travel by paying fare on the train, the company must limit its demand to the maximum allowed by its charter.[3]

The court is requested by the plaintiff to instruct the jury:

3. If the jury find that the amount demanded from plaintiff by the conductor was in excess of the maximum rate of fare per mile fixed by defendant's charter, such demand was illegal; and if, in consequence of plaintiff's refusal to pay the excessive amount so demanded, he was ejected from the train, he is entitled to recover in this action, especially if the jury further find that he was willing to pay, and tendered to the conductor, the regular ticket or cash fare between said points.

Answer: Affirmed.[4]

It seems that the company has a regulation, known to its officers at least, and the regulation on which this conductor acted that night, that where a passenger gets on the train to get transportation to some other point on the road without a ticket, the conductor is to collect from him the regular fare that he would have paid for a ticket and ten cents in addition to that, regardless of the distance he is going to travel. The conductor, acting on that, demanded the ten cents additional fare, making twenty-four cents. There is no doubt that the railroad company, both in its own interest and in the interest and convenience of the public in traveling, has a right to make some difference in the fare charged to a person who gets his ticket at the office and has it so that the evidence of payment of fare shall be easily taken by the conductor, or ticket collector, or whoever it may be, without inconvenience and without waste of time. If they only make a reasonable difference under the circumstances, then it is a valid one; and if the passenger, hav-

ing neglected to get his ticket, refuses to pay the proper fare, and is put off, the company is not liable. It seems that there is another part of the regulation, that when the conductor collects the extra fare from the passenger, he is required to give him a receipt or duplicate ticket, or something of the kind, which is said to entitle the passenger paying it, if he sees fit to go for it, to receive back the ten cents at the office of the company. Now we are unable to see, that giving that receipt converts this into anything else than the fare demanded on the road, and we say to you, when the conductor demanded twenty-four cents from the plaintiff, as a condition precedent to his ride to Union station, it was a demand of twenty-four cents as fare; and if that was a larger fare than the law of the company, namely, its charter, authorized it to charge, then it was a demand of an illegal fare, and the regulation as to this particular case, and between these two stations, is illegal, and, therefore, unreasonable. If left to the court to form a conclusion, as to whether or not it was a reasonable discrimination between a ticket fare and the cash fare, I would say that ten cents is an unreasonable addition to make to the fare between these two points; but that is immaterial in this case, with the view we take of what this demand was; namely, a demand of the fare of twenty-four cents. . . . .

[The act of assembly, read in your presence and offered in evidence, fixes the maximum fare that the railroad company can charge between any points, as three and one half cents per mile. The admitted distance between the two stations is four and one half miles; from which I think they would be entitled to charge for five miles; so that this would be an excessive fare, beyond the maximum that the statute authorized the Pennsylvania railroad to charge in any case, and therefore illegal.] [5] If that fare was demanded, and the plaintiff was put off because he would not pay it, it is immaterial that he got off before force was used; it was illegal, and the defendant is liable for the damages.

There are two questions that appear to be in dispute from the evidence, which I do not deem material. We have admitted several things in evidence, on the part of defendant, which we are inclined to think are not strictly legal evidence, but think it is important that everything connected with this case should

go on the record, and we will ask you to pass on two questions disputed by the testimony. . . . .

Did the plaintiff, Mr. Reese, on the evening in question, arrive at East Liberty station in time to procure a ticket before going on the train? If he did, answer it yes; if he did not, answer it no. The next is, that the conductor explained to Mr. Reese that when he would pay the twenty-four cents, he would get a receipt, or something, entitling him to be paid back ten cents. Mr. Reese says he did not explain anything of the kind, and the other two witnesses corroborate it. . . . . We ask you to answer either in the negative or affirmative that question.

[If you find that the fare demanded was in excess of the legal fare, three and one half cents per mile, and that he was put off for not paying that, then you find for the plaintiff, and you will return that verdict, filling the amount in][6] and answering these questions. The next question is, if you find for the plaintiff, what is the amount of damages? . . . .

The jury rendered the following verdict: "We find for the plaintiff in the sum of two hundred and fifty dollars ($250). And we have further answered the annexed questions submitted to us for answer as part of the verdict:

"1. Did the plaintiff, Mr. Reese, on the evening in question, arrive at the East Liberty station in time to procure a ticket before getting on the train?

"No."

"2. Did the conductor, when demanding from the plaintiff twenty-four cents fare, or before putting him off the train, inform him that he would obtain a receipt entitling him to be repaid ten cents of the fare on presentation at the proper office; or did Mr. Reese know that such was the regulation?

"No."

Judgment having been entered upon the verdict, the defendant took this appeal, assigning for error:

1–3. The answers to defendant's points.[1 to 3]

4. The answer to plaintiffs' point.[4]

5, 6. The parts of the charge embraced in [ ] [5] [6]

*Mr. George B. Gordon* (with him *Mr. John H. Hampton* and *Mr. William Scott*), for the appellant:

1. The single question in the case is: Was the regulation which the defendant company sought to impose upon the plaintiff a reasonable one? The evidence being entirely undisputed, the question of reasonableness is one of law for the court: Pittsburgh etc. Ry. Co. v. Lyon, 123 Pa. 149; Hibernia F. Eng. Co. v. Harrison, 93 Pa. 264. Under its charter the defendant company has power to make rules and regulations relating to its convenience in the management of its business: § 21, act of April 13, 1846, P. L. 312; Penna. R. Co. v. Langdon, 92 Pa. 21. The regulation in question was therefore one of a class it had power to make. It was valid and binding unless it violated the constitution and laws of the United States or of this state, the charter of the company, or the common law requirement that such regulations must be reasonable, or rather not unreasonable: Chitty on Carriers, *76; Angell & Ames on Corp., § 357; Hibernia F. Eng. Co. v. Harrison, 93 Pa. 267; Fields on Corporations, § 296; Commonwealth v. Power, 7 Metc. 600; Jenks v. Coleman, 2 Sumn. 224; Dillon on Mun. Corp., § 319; 1 Waterman on Corporations, § 75; 1 Morawetz on Corp., § 496; 1 Rorer on Railroads, 227.

2. This regulation manifestly does not violate the constitution or laws of the United States, or the constitution and statutory law of Pennsylvania. The court below decided that it violated the provision in the defendant's charter, that "in the transportation of passengers, no charge shall be made to exceed . . . . . three and one half cents per mile for way passengers," because in this instance the excess of ten cents collected from the passenger and afterwards refunded to him, when added to the regular fare made a sum greater than three and one half cents per mile for the distance traveled. In this decision the court confounded two distinct powers of the company; the power to make regulations, and the right to exact tolls or charges for the transportation of passengers. The "charge," the amount of which the charter limits, is the compensation the company is to receive for performing its duty as a carrier. Admittedly that was in the present case fourteen cents, or three cents per mile. The regulation in question prescribed that an "excess," over and above the fare or compensation, should be paid. This requirement is in the nature of a penalty for the passenger's failure to comply with the rule directing him to

provide himself with a ticket before entering the cars. As such, it must be uniform to be reasonable; the penalty cannot be graded on a mileage rate, but must be the same for every violation of the rule.

3. But we are not without express authority on this question. The cases are uniform that a passenger who violates a rule of the company requiring him to purchase a ticket at the ticket office, may be charged a higher rate of fare on the train as a penalty, provided the excess is reasonable: Chicago etc. R. Co. v. Parks, 18 Ill. 460; Hutchinson on Carriers, 571; State v. Hungerford, 34 Am. & Eng. Corp. Cas. 266 (Minn.); Wilsey v. Railroad Co., 83 Ky. 516; Swan v. Railroad Co., 132 Mass. 117; Stephen v. Smith, 29 Vt. 163; Hilliard v. Goold, 34 N. H. 241; (66 Am. Dec. 765.) The company has the right to prescribe the time, place and manner of receiving fares: State v. Chovin, 7 Iowa 208; Lake Shore etc. Ry. Co. v. Greenwood, 79 Pa. 373; St. Louis etc. Ry. Co. v. South, 43 Ill. 181 (92 Am. Dec. 103). Nor is the regulation unreasonable, in a legal sense, under the common law. That term means, when applied to a regulation of a public company, that it is impossible of performance, in restraint of trade, violative of common rights, oppressive, or an imposition upon the individual of an amount of trouble disproportionate to the good to be obtained by the corporation: Hilbird v. Railway Co., 15 N. Y. 455; State v. Overton, 24 N. J. 441; Chilton v. Railway Co., 16 M. & W. 212; Deardon v. Townsend, 1 Q. B. 9; Queen v. Freere, L. J., 24 N. S. (C. L.) 148; London etc. R. Co. v. Watson, L. R. 3 C. P. Div. 429; St. Mary's Benef. Soc. v. Burford, 70 Pa. 324.

4. Regulations are reasonable that passengers must not ride in baggage cars: Penna. R. Co. v. Langdon, 92 Pa. 21; that they must not put their arms out of the window: Pittsburgh etc. R. Co. v. McClurg, 56 Pa. 294; that they must keep off the platform: Camden etc. R. Co. v. Hoosey, 99 Pa. 492; that they must alight on the station platform: Penna. R. Co. v. Zebe, 33 Pa. 318. A railroad company may refuse to receive fares upon trains at all, and forbid passengers without tickets to enter the cars: Hutchinson on Carriers, § 570; Lake Shore etc. Ry. Co. v. Greenwood, 79 Pa. 373. A great many decisions in various parts of this country sustain the

reasonableness of such a rule. A fortiori, is the regulation in the case at bar reasonable, which gives the passenger the option of leaving the train, or of paying the excess of ten cents and going to the ticket office at the end of his journey and getting it back again. The defendant was not bound to bring home to the plaintiff personal notice of the rule. The posting of it at the ticket office was sufficient; he was then bound to inform himself of it: Lake Shore etc. Ry. Co. v. Rosenzweig, 113 Pa. 519; Dietrich v. Railroad Co., 71 Pa. 432; Oil Creek etc. Ry. Co. v. Clark, 72 Pa. 231. His failure to arrive at the station in time to buy a ticket is no excuse; it was his duty to be there in time: Indianapolis etc. R. Co. v. Kennedy, 77 Ind. 507; Hoffbauer v. Railroad Co., 52 Iowa 342 (35 Am. Rep. 278); Bardeaux v. Railroad Co., 8 Hun 579; Chicago etc. R. Co. v. Parks, 18 Ill. 460 (68 Am. Dec. 562); Swan v. Railroad Co., 132 Mass. 116.

*Mr. A. C. Johnston* and *Mr. Levi Bird Duff*, for the appellee: 1. We do not dispute the doctrine laid down in Forsee v. Railroad Co., 63 Minn. 66 (56 Am. Rep. 801); Dillon on Mun. Corp., § 319, and Waterman on Corp., § 75, that discriminations as to the rates of fare may be made between passengers who do, and those who do not, procure tickets, provided the maximum rate allowed by the company's charter and existing laws is not exceeded. But there is no case holding that the limit prescribed by the charter or the general laws of the state may be disregarded in this particular. On the contrary, the authorities say that the ejection of a passenger who is without a ticket and refuses to pay a rate greater than that established by law, is illegal: Wilsey v. Railroad Co., 83 Ky. 511; Smith v. Railroad Co., 23 Ohio 10; Cincinnati etc. R. Co. v. Cole, 29 Ohio 126 (23 Am. Rep. 729); Railroad Co. v. Skillman, 39 Ohio 444; London & Brighton Ry. Co., L. R. 3 C. P. Div. 429; Saunders v. Railway Co., L. R. 5 Q. B. Div. 456.

2. Lake Shore etc. Ry. Co. v. Greenwood, 79 Pa. 373, and other cases, cited by the defendant in support of the proposition that a railroad company may refuse to carry passengers without tickets, all refer without exception to freight trains, and do not apply to this case. If this regulation were a valid

one, the burden would be on the defendant to show that it was made known to the plaintiff, the mere posting of placards not being sufficient: Lake Shore etc. Ry. Co. v. Greenwood, 79 Pa. 373; Penna. Ry. Co. v. Spicker, 105 Pa. 142. But clearly the regulation was illegal under the defendant company's charter. Further, it was unreasonable in itself. As modified by the instructions to conductors, it does not apply to all passengers and all trains. A rule which may be enforced against one passenger and suspended as to another, is not fair and impartial.

3. The rule is also oppressive and unjust. There are, as we learn from the rule itself, ticket and non-ticket stations. If the destination of the passenger is one of the latter, he may have to travel miles to collect his ten cents back. Moreover, it is a well known fact that ticket offices outside of the large cities are open only for short periods prior to the departure of trains. There are only certain places and hours when payment may be obtained, and the collection of the ten cents is more oppressive than its loss. In other words, the excess is lost to the passenger. It is said this is a penalty; but the power to impose penalties is found nowhere in the defendant's charter or the laws of the state, and especially may it not do this summarily, without trial.

OPINION, MR. JUSTICE MITCHELL:

The right of railroad companies to make reasonable regulations, not only as to the amounts of fares, but as to the time, place, and mode of payment, is unquestionable. This right includes the right to refuse altogether to carry without the previous procurement of a ticket: Lake Shore etc. Ry. Co. v. Greenwood, 79 Pa. 373. That case arose upon a special regulation as to the carriage of passengers upon freight trains; but there is no appreciable distinction between it and a general regulation as to all passengers. Both rest on the common law principle that requires payment or tender as an indispensable preliminary to holding a carrier liable for refusal to carry, and on the manifest and necessary convenience of business, where the number of passengers is liable to be large and the time for serving them short.

So, too, the authorities are uniform that companies may

charge an additional or higher rate of fare to those who do not purchase tickets before entering the cars: Crocker v. Railroad Co., 24 Conn. 249; Swan v. Railroad Co., 132 Mass. 116; Hilliard v. Goold, 34 N. H. 241; Stephen v. Smith, 29 Vt. 160; State v. Goold, 53 Me. 279; State v. Chovin, 7 Iowa 208; Du Laurans v. Railroad Co., 15 Minn. 49; State v. Hungerford, 39 Minn. 6 (34 Amer. & Eng. R. Cas. 265), and note; Chicago etc. R. Co. v. Parks, 18 Ill. 460; Pullman Co. v. Reed, 75 Ill. 130; Railroad Co. v. Skillman, 39 Ohio 451; Forsee v. Railroad Co., 63 Miss. 67. And it may be noted, in response to one of the most urgently pressed arguments of the defendant in error, that the reasons almost uniformly given in support of this long line of decisions include the furthering of the honest, orderly, and convenient conduct by the railroad company of its own business.

The regulation in question in the present case, is not in itself unreasonable or oppressive. In regard to the traveler, it is scarcely just ground of complaint that he has to present his refunding ticket at the end of his journey, instead of getting an ordinary ticket at the start. The inconvenience, if any, is the result of his own default. With reference to the other passengers, and still more to the railroad company, the regulation is conducive to the rapid, orderly, and convenient dispatch of the conductor's part in the collection of fares, and thus to leaving him free for the performance of his other duties in connection with the stops at stations, the entrance and exit of passengers, and the general supervision of the safety and comfort of those under his care.

If, therefore, the company may refuse to carry at all without a ticket, it may fairly refuse under the far less inconvenient alternative to the traveler of putting him to the trouble of going to an office to get his excess refunded. If the company may charge those failing to get a ticket an additional price, and keep it, certainly they may charge such price and refund it; and, as the regulation is not in itself unreasonable or oppressive, or needlessly inconvenient to the traveler, its validity, upon general principles and on authority, would seem to be beyond question.

These views were conceded by the learned judge below, and are not seriously questioned by counsel here. But the decision

was based upon the view that the extra ten cents imposed by this regulation is a part of the fare, and makes it higher than the rate allowed by the act of incorporation of the company. The language of the act is, " In the transportation of passengers no charge shall be made to exceed . . . . . three and one half cents per mile for way passengers." As the distance from East Liberty station to the Union station in Pittsburgh is $4\frac{1}{2}$ miles, and the regular fare fourteen cents, it is admitted that the extra ten cents is in excess of the charter rate, if it is a " charge for transportation " within the meaning of the act. Should it be so regarded ? " Charge " is a word of very general and varied use. Webster gives it thirteen different meanings, none of which, however, expresses the exact sense in which it is used in this charter. The great dictionary of the Philological Society, now in course of publication, gives it twenty separate principal definitions, besides a nearly equal number of subordinate variations of meaning. Of these definitions, one (10 *b*) is, " The price required or demanded for service rendered, or (less usually) for goods supplied ; " and this expresses accurately the sense of the word in the present case. The essence of the meaning is that it is something required, exacted, or taken from the traveler as compensation for the service rendered, and, of course, something taken permanently,—not taken temporarily, and returned. The purpose of the restriction in the charter is the regulation of the amount of fares, not of the mode of collection; the protection of the traveler from excessive demands, not interference with the time, place, or mode of payment. These are mere administrative details, which depend on varying circumstances, and are therefore left to the ordinary course of business management. We fail to see anything in the present regulation which can properly be treated as an excessive charge, within the prohibition of the charter.

Nor is there any force in the objection that this regulation is unreasonable. It is said not to be general, fair, and impartial, because it provides that as to passengers getting on the train at stations where there is no ticket office, etc., or on trains where, on account of the excessive rush of business, it is impossible to issue the refunding check, the collection of the excess shall be omitted. The objection overlooks the necessary qualifications to the validity of such a regulation. All the cases are agreed

that the regulation would be unreasonable, and therefore void, unless the carrier should give the passenger a convenient place and opportunity to buy his ticket before entering the train. This part of the regulation merely puts in express words a necessary exception which the law would otherwise imply. So, as to the excessive rush of business. Reasonableness depends on circumstances. To collect the extra amount and issue return checks to as many passengers as the conductor could reach in time, and let all others go free entirely, would be much more unreasonable than to treat all alike and dispense with the regulation for the time being. Necessity modifies the application of all rules, and there is nothing unreasonable in requiring the conductor to exercise sufficient foresight to see whether he can perform the prescribed duty in the available time, and investing him with the discretion to omit it altogether, if, in his judgment, he cannot perform it fully.

No authorities precisely in point have been found upon either side. The cases cited by the defendant in error, from Kentucky and Ohio, are widely distinguishable, as they were cases of absolute charge beyond the charter limit, without any provision for return of the excess to the traveler. But on well-settled principles we are of opinion that the regulation is reasonable in itself, and not in violation of the restriction in the act of incorporation. The defendant's first point should therefore have been affirmed.

Judgment reversed.

Mr. Justice STERRETT dissented.