## Dietrich *versus* The Pennsylvania Railroad Co.

1. A passenger bought a "Drover's ticket," on a railroad, at half the regular price, "good only in (his) hands, for one seat from Philadelphia to Pittsburg, from March 11th to 16th. He went to Lancaster on the train, got off there, got on another train the next day; a conductor put him off, and afterwards allowed him to proceed; was put off by another who had afterwards taken charge of the train; at Altoona he entered again, paid his fare to prevent being put off, and proceeded to Pittsburg. *Held*, that the face of the ticket did not import a right to stop off, and the passenger had no cause of action against the company for his ejection.

2. One conductor allowing the passenger without right to ride on the train to Altoona, did not give him a right to be carried to Pittsburg.

3. Such tickets are qualified by the rules and regulations of the company in running their trains: provided the rules are reasonable and not *contrary* to the terms expressed.

[Dietrich *v.* Pennsylvania Railroad Co.]

4. A purchaser of a ticket must inform himself of the rules governing the transit and conduct of the trains.

5. A passenger having a "stop-off" ticket cannot require a train to be stopped at a station not on its time table.

6. The burden is not on the company to show that a passenger had notice of their reasonable rules in running trains.

7. A general railroad ticket, which any holder may use within a reasonable time, does not authorize the holder to stop off at intermediate points.

8. "Good for one seat," means a seat in the train on which the passenger enters to be carried; not by different trains or by broken stages.

9. This rule is subject to the exception that a passenger may resume his journey, where by misfortune or accident, not his fault, it has been interrupted.

May 8th 1872.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lancaster county :* No. 38 to May Term 1872.

This was an action on the case by Adam Dietrich against The Pennsylvania Railroad Company, for ejecting him from a car of the company in which he was travelling.

The plaintiff, a shipper of cattle, testified that on the 11th of March 1867, he purchased in Philadelphia a ticket, of which the following is a copy :—

"DROVER'S TICKET.

Not Good on the Philadelphia Express.

Good only in the hands of Mr. A. Dietrich, for one seat from Philadelphia to Pittsburg.

This ticket good only until March 16th 1867.

Issued March 10th 1867.        S. H. WALLACE, Agent."

The ticket was stamped on the back :—

"Penna. Railroad, March 11th 1867, Philadelphia."

He paid $5 for the ticket; the regular fare from Philadelphia to Pittsburg was $11.   He had bought such tickets or passes for a year before, but had also bought tickets from Philadelphia to Lancaster, stopped off there, and then used his pass from Lancaster to Pittsburg.   He had been told by a conductor that he must go on a continuous train; he asked Mr. Wimer, a freight agent, whose business it was to endorse a certificate to enable shippers of cattle to get a drover's ticket.   He said that "it was not intended for men like me who shipped every week to buy one additional ticket for Philadelphia.   I asked Mr. Franciscus to endorse this ticket to stop off at Lancaster; he said, 'No, sir.'"   Plaintiff had heard Mr. Young, the conductor, refuse a man who had a similar ticket. Young said there was an order to that effect.   After plaintiff purchased the ticket on the 11th, he got on the fast train, and came to Lancaster; there he got off and remained at his home that night; next day he took the fast line at Lancaster for Pittsburg. Mr. Young, the conductor, when he came around for tickets, told

[Dietrich *v*. Pennsylvania Railroad Co.]

plaintiff he would have to get off at Landisville (the first stopping place beyond Lancaster); plaintiff did not get off. When the conductor came again, he said, "You did not get off at Landisville;" plaintiff said, "I didn't intend to get off." Young then told the brakesman to put him off at Mount Joy, the next stopping-place. When the train reached there, the brakesman told him he was at Mount Joy; plaintiff said, if the brakesman put him off he would not resist; the brakesman put him off. Young told him to get on again, and he was carried to Altoona. Young there left the train, and it was taken charge of by another conductor, Mr. Hawkins. After the train was on its way, Hawkins told plaintiff he could not recognise his ticket; at Galitzin on the top of the Allegheny mountain, Hawkins put him off. Plaintiff got on as the cars were starting. Hawkins demanded his fare which he said he must pay or he would have to get off; plaintiff paid his fare to Pittsburg. "Hawkins was not rude or unkind; he told me it was his duty to collect the fare or put me off." The plaintiff closed.

The defendant moved for a nonsuit which the court (Hayes, J.) directed to be entered.

The plaintiff removed the record by writ of error to the Supreme Court, and assigned for error the entry of the nonsuit.

*S. H. Reynolds* and *O. J. Dickey*, for plaintiff in error.

*G. F. Breneman* and *H. M. North*, for defendants in error.— Railway companies may make reasonable regulations for the carriage of passengers: 1 Redfield on Railways 99 *et seq.*, 3d ed.; State *v*. Overton, 4 Zabriskie 435; Cheney *v*. The B. & M. Railroad Co., 11 Metc. 121; Beebe *v*. Ayres, 28 Barb. 275; Johnson *v*. Concord Railroad, 46 N. H. 213; C. C. & C. Railroad *v*. Bartram, 11 Ohio S. R. 457; State *v*. Gould, 53 Maine 279; Crocker *v*. Railroad Co., 24 Conn. 249. The purchase of the ticket by Dietrich created a contract by which he was to be carried directly from Philadelphia to Pittsburg. The company did not contract to carry him from point to point on the route at his pleasure, until he reached his destination, and when he left the train at Lancaster, he broke the contract, the performance of which was commenced when he embarked on the train at Philadelphia.

The opinion of the court was delivered, May 13th 1872, by

Agnew, J.—This was a judgment of nonsuit, and the question is, whether the plaintiff's evidence disclosed a case for the jury. Deitrich, the plaintiff, was a drover, residing in Lancaster county. On the 11th of March 1867, he purchased a drovers' ticket from Philadelphia to Pittsburg, and took passage on the fast line on the defendant's railroad. At Lancaster he got off, and next day (the 12th) he resumed his journey. When the conductor, Young came

along collecting fares, he declined the plaintiff's ticket on the ground that he had "stopped off," and informed him such were his orders. Young told him he must get off at Landisville. After passing Landisville, finding him still on the train, Young told him he must get off at Mount Joy. At Mount Joy the brakesman put him off, but Young, who observed the brakesman taking him across the track, halloed at him not to put him off in that way; and told Dietrich to get on again. He was then carried to Altoona, where Young's portion of the route ended. After leaving Altoona, Hawkins, the conductor from Altoona to Pittsburg, came around, and the plaintiff exhibited his drover's ticket. Hawkins refused it and put him off at Galitzin, at the west end of the mountain tunnel. The plaintiff got on without leave, and Hawkins again refusing his ticket, the plaintiff paid his fare from Altoona to Pittsburg.

On his cross-examination, the plaintiff stated that Hawkins was not rude or unkind, and told him it was his duty to collect the fare or put him off. Dietrich said to him, "I want this tested and I want you to put me off genteely." The question is, therefore, simply upon a breach of the contract for carriage, and depends on its terms. Before examining the terms of the ticket, it is proper to clear the case of some immaterial matters. Stress is laid on the statement of Wimer, that the restriction of stopping off, was not intended for such men as he, who shipped stock over the road every week. This clearly has no influence whatever in ascertaining or interpreting the terms of the ticket; he afterwards purchased from the proper ticket agent. Wimer was a mere freight agent, whose duty had no relation to the sale of tickets, but was confined to giving the required certificate to entitle Dietrich to a drover's ticket. When Dietrich went to Franciscus, and asked him to make the ticket so as to stop off at Lancaster, Franciscus said, "No sir." He admits that he knew of the restriction as to stopping off, which his request implies, and that he had seen Young refuse another drover's ticket for this cause, and that in consequence he had been in the habit of buying a ticket from Philadelphia to Lancaster, when he wished to stop off. The restriction, and his knowledge of it, if this were necessary, are plainly proved by himself. It is evident, therefore, that the plaintiff is thrown upon his ticket and the terms it imports or recognises, as the evidence of his right of transit over the defendant's road. The ticket is in these words : "Drover's ticket. Not good on the Philadelphia Express. Good only in the hands of Mr. A. Dietrich for one seat from Philadelphia to Pittsburg. This ticket good only until March 16th 1867. Issued March 11th 1867. S. H. Wallace, agent." On the back is stamped "Penna. R. R., March 11th 1867. Philadelphia." Such tickets are evidence of the payment of the fare, and of the right of the holder or party

[Dietrich *v.* Pennsylvania Railroad Co.]

named, as here, to be carried according to its terms. So far as they are expressed the terms are binding of course, but such tickets are not the whole contract, which must be gathered, so far as not expressed, from the rules and regulations of the company in running its trains. This is the generally received doctrine, with the qualification, however, that these rules and regulations must be reasonable and not contrary to the terms expressed : see Johnson *v.* The Concord Railroad Co., 46 N. H. Rep. 213, and cases there cited ; The State *v.* Overton, 4 Zabriskie 435 ; The Clev., Col. & Cin. Railroad Co. *v.* S. H. Bartram, 11 Ohio St. Rep. 457 ; Cheney *v.* The Boston & Maine Railroad Co., 11 Met. 121. With the same qualification of reasonableness it is also well settled that one who buys a ticket is bound to inform himself of the rules and regulations of the company governing the transit and conduct of its trains. Thus he must ascertain the train in which he is to go, the time of its departure and arrival, its stopping stations, his right to get off and get on, to resume his trips, &c. See the cases, *supra*. If the law were otherwise a railroad company could not regulate the running of its trains to suit the interests of the public or of themselves. For this purpose some trains 'must be fast, with few stoppages. Others must be slow, with frequent stoppages. Some must be through trains and others local. It is very clear that a passenger with a through ticket cannot require a local train to carry him through. Nor can he require a through train to stop at a way station not in its time table. Even having a stop-off ticket would not increase his right to require the train to stop at a station not in its time table.

It is evident that if in such cases the holders of tickets can compel the trains to alter regulations, they would be governed by the passengers and not by the company. An excursion party on this principle, stopping off at will, would overcrowd a subsequent train to the discomfort of the proper passengers, and to the prejudice of the interests of the company. The authorities, as well as the reason of the thing, show that the company must make its own regulations, and that passengers purchase their tickets subject to these rules, and that it does not lie on the company to bring home notice of them in order to establish the terms of the contract of carriage. In this case, the testimony of the plaintiff himself clearly shows that his ticket did not entitle him to stop off at Lancaster, and if notice were necessary that he knew that fact. This brings us now to the question, whether the face of the ticket, by its terms, imports a right to stop off. The first noticeable and very obvious thing is, that the terms on the face of the ticket are very restrictive. It is expressed to be a " Drover's ticket." It cannot be used by any other than a drover. Then it is not good on the Philadelphia Express ; it is " good only in the hands of Mr. A. Dietrich ;" no one else can use it ; then, " this ticket is

good *only* until March 16th 1867." It is therefore not good after that day. It is restrictive from the beginning to the end, and is wholly unlike a general ticket which any holder may use, within any reasonable time and yet even as to such tickets, the authorities are clear, the right to stop off at intermediate unnamed points, does not exist unless by means of stop-off tickets or the customary rules of passage. The expressed terms of a drover's ticket being all restrictive without exception, it gives no countenance to an implied right to stop-off. The reason is obvious also ; the ticket is sold at less than half price ; that is, this was for five dollars instead of eleven. Its purpose is special, and the restriction in time (until the 16th of March) was to prevent abuse of the benefit intended to be conferred on a particular class of persons.

With all these restrictions on the face of the ticket, and in full view of the purpose of the ticket, it is obviously impossible to interpret the words, " good *only* until March 16th" into an enlargement of the contract, so that it shall read, contrary to the regulation of the company, " good to travel every day, from day to day, from the 11th to the 16th of March, by as many trains from and to every station at which the trains stop, and by as many stages as A. Dietrich may elect to make." Then when we come to the marrow of the ticket, to wit, good for " *one* seat from Philadelphia to Pittsburg," it does not change the purpose, and the restrictive character of it. There is nothing in the words " *one* seat" which enlarges the meaning so that the holder may take seat after seat, train after train, day after day, and from station to station, especially in contravention of the known regulations of the company as to the travel on such tickets. It necessarily follows that the contract for " *one* seat from Philadelphia to Pittsburg" must mean in the train which the holder of the ticket enters to be carried, and not by train after train, and by broken stages day after day. That this is the true interpretation of the contract is decided in State *v.* Overton, 4 Zabriskie 438 ; Clev., Col. & Cin. Railroad Co. *v.* Bartram, 11 Ohio St. R. 462 ; Johnson *v.* Con. Railroad Co., 46 N. H. 213, and Cheney *v.* Bos. & M. Railroad Co., 11 Metc. 121 ; Angell on Carriers, ed. 1808, sect. 609. No cases are cited to the contrary, and we remember none. The language of C. J. Green, on this point, in State *v.* Overton, is so much to the purpose we quote it : " The question," he says, " is obviously a question of contract between the passenger and the company. By paying for passage and procuring a ticket from Newark to Morristown, the passenger acquired the right to be carried directly from one point to the other without interruption. He acquired no right to be transported from one point to another upon the route at different times and by different lines of conveyance, until the entire journey was accomplished. The company engaged to carry the passenger over an entire route

for a stipulated price. But it was no part of the contract that they would suffer him to leave the train and resume his seat in another train at any intervening point upon the road." " If the passenger chose voluntarily to leave the train before reaching his destination, he forfeited all rights under his contract. The company did not engage and were not bound to carry him in any other train, or at any other time, over the residue of the route." " This is the clear legal effect of the contract between the company and the passenger in the absence of any evidence to the contrary. If the passenger insists that under his contract, by virtue of general usage, or the custom of the road, he is entitled to be carried at his pleasure, either by one or different trains, the burthen of proof was upon the state;" that is, it lay on the passenger, the case being an indictment against a conductor for a battery in putting off a passenger unlawfully.

In adopting this language of the learned chief justice of New Jersey, we should not omit to guard our meaning by saying there may be exceptions where, from misfortune or accident, without his fault, the transit of a passenger is interrupted, and where he may resume his journey afterwards. In the present case the ticket of Dietrich gave him no right to stop off, and the company, when he took his seat in the train at Philadelphia, having entered upon the performance of its contract, had a right to continue its execution without interruption. Another reason is, that fare covers the ordinary luggage of the passenger, entitling it to be checked through to the point of destination. But if the passenger may stop off he may demand his baggage at each stoppage, or if it go on he will not be at the end of the journey to receive it. The contract was therefore broken by Dietrich himself when he stopped at Lancaster without permission. When he came upon the train, the next day, he began a new journey, and on refusing to pay his fare he became a trespasser, and was rightfully put off at Mount Joy. But it is argued that as he was permitted by Young to re-enter the train and was carried to Altoona, he acquired a right to be carried to Pittsburg. This is erroneous. When Dietrich stopped at Lancaster, his right of transportation under his ticket ended, as we have seen. Consequently, when he began a new passage the next day, he was bound to pay his fare. He knew this, and that he was put off at Mount Joy because he would not pay it. Therefore Young, as conductor, being bound by the rules of the company, not only had no authority, but acted against his orders in permitting him to return upon the train without payment of his fare. The ticket having lost its title to be recognised, all that Young did thereafter was unauthorized, and the plaintiff knew this. Clearly no title to be carried through to Pittsburg could be acquired by Young re-offering him to ride without payment of his fare. Young could not carry him, and could not,

by his omission to collect the fare, send him forward without payment of any. His violation of duty, in carrying a passenger without payment of fare, clearly could not bind his successor upon the remainder of the route. It is very clear that when Hawkins took his place on the train, between Altoona and Pittsburg, it was not only his right but his duty to demand the fare between those places. He found Dietrich without a ticket importing a right of passage, and without any evidence of payment of the fare. The fact that the company had lost the fare from Lancaster to Altoona by Young's violation of duty, conferred no right of further transportation, while Dietrich, at every step afterwards, was travelling without right, and with full notice that he was doing so. As remarked by Beebe v. Ayres, 28 Barb. 278, the conduct of one conductor in violating the rules of his employers, could not prejudice another employee more faithful than himself, who has adhered to his instructions, and discharged his duties under them.

　　　　　The judgment of the court below is therefore affirmed.