| | |
|---|---|
| 72 | 231 |
| 208 | 538 |

# The Oil Creek and Allegheny River Railway Co. *versus* Clark.

1. A railroad ticket stating on its face to be from one station named to another station named, does not import a right to make the journey between the stations, by different trains.

2. Such ticket imports only a single continuous trip.

3. Dietrich v. Penna. R. R., 21 P. F. Smith 432, recognised.

October 25th 1872. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, J.J.

Error to the Court of Common Pleas of *Crawford county :* No. 49, to October and November Term 1872.

This was an action on the case, brought to September Term 1870 of the court below by Samuel J. Clark, against " The Oil Creek and Allegheny River Railway Company."

The plaintiff's cause of action was the putting him off the cars of the defendants under the following circumstances : The plaintiff had bought a car ticket from a station on defendants' road

[O. C. & A. R. Railway Co. *v.* Clark.]

called "Miller Farm" to go to Oil City, a distance of 12 miles; the ticket was as follows:

| OIL CREEK & ALLEGHENY R. R'WAY. | O. C. & A. R. R. WAY |
|---|---|
| MILLER FARM<br>TO<br>OIL CITY. | January<br>6<br>1870. |

He entered the car of the defendants, exhibited his ticket to the conductor, who "punched" it and returned it to him. He travelled on the train for three and a half miles to "Petroleum Centre," another station on the road, where he stepped from the train to the platform of the station, and whilst there conversing with an acquaintance, the train moved on and left him on the platform. The plaintiff waited for the next train on the defendants' road; he took that train and the conductor refused to accept the ticket which had been punched, although the plaintiff informed him that he had been accidentally left; he demanded the fare from the plaintiff, and upon his refusal to pay removed him from the train.

By a general rule of the company, passengers were not allowed to leave one train and take a later one without giving notice to the conductor of the first, and the conductors of the later trains are required to remove such passengers from the train, unless they pay their fare: punching is a cancellation of a ticket.

Lowrie, P. J., charged:—

* * * "[Whether or not the company defendant has such a rule of practice as is insisted on here, is a question of fact for the jury. If it has such a rule, requiring passengers, once started on their journey, to give notice to the conductor before leaving the train in order to finish their journey on a later one, under the penalty of having their ticket treated as cancelled and of being ejected from such later train; it is not an unreasonable one, and it ought to be obeyed].

"General society has its customs, and every trade, occupation, office and business has its usages; this is as natural and necessary as habits to the individual man. These usages and customs may grow up spontaneously and unconsciously, or they may be instituted by expressed law or rule. The general customs of the country are its common law, and all are charged with knowledge of them. Not so however with the rules and usages of particular occupations, trades and businesses, other people are not bound by them merely by coming into transient relation with trades. These usages are principally for the convenience of the trade itself, and others are not bound by them, except so far as they know and may be presumed to accept them. Whatever a law says it says to those who come under it, that they may not have the excuse of ignorance of it, and thus by law is knowledge of sin and of duty in matters of this kind as well as in other cases.

[O. C. & A. R. Railway Co. v. Clark.]

" The defendant is a public carrier, and, as such, is bound to carry any one who offers to go on their trains, on payment of the legal fare; and, in doing so, it can impose no unreasonable terms, nor claim any higher quality or authority for its rules and usages than is conceded to those of other forms of business.    The rule insisted on is said to require a passenger to give notice to the conductor of his intention to get off and take another train at any point, so that the conductor may punch or otherwise mark his ticket accordingly; but it is not shown how the rule originated, who made it, or whether it applies to the whole or only to a part of the defendant's road, and I know of no evidence that the plaintiff had any knowledge of the rule.    From the argument of the defendant's counsel it might seem to be specially applicable to the locality in question, for the purpose of providing against the crowds who throng the cars there and the attempts of some of them to steal a ride.    But honest men are not to be presumed to know of such necessity.    We cannot dispense with the passengers' knowledge of the rule, because the defendant's business is so great that they cannot give notice of their rules, and especially against a passenger who may accidentally and unintentionally find himself left by the train.    This would be like ·saying, the greater the company's profits the less its duties to the public.

"[A man who never travelled the road would not be expected to know the rule, and one who had never stopped at an intermediate station would have little chance of learning it, unless by seeing some one ejected for transgressing it.    None but railroad men would be expected to know that a special rule is necessary to prevent people from stealing rides] at particular places.    [The ticket grants the plaintiff the right to travel on the journey named on it, and it does not seem that he was bound to any particular train, and it imposes no terms and gives no notice of any rule that he is required to obey or to inquire about].

" It is argued that the plaintiff was bound to inquire for written terms of the contract.    But of whom must he inquire?    Conductors offer no information and generally have no time to give any. At principal stations there are many offices, and modest men cannot be expected to run from one to another to inquire, at the risk of finding themselves very unwelcome.    At way stations there is only the ticket agent, and he has no time to give instruction in the few minutes before train time that he opens his window to a jostling crowd of applicants.    If the people are bound to find out such rules, then reason would require that the company should provide agents to give the information, and let it be known who they are, and give time and opportunity to find them and obtain it.    It is not denied that the plaintiff had a right to travel the whole journey, part on one train and part on later ones, but it is claimed that he

forfeited part of this right by leaving the first train without giving notice to the conductor. For the purpose of raising the answer relied on by the plaintiff, I assume this to be true; if the plaintiff knew of the rule of the road which the defendant relies on, I should hesitate about accepting this claim as a true statement of the law, even with this qualification, if the case depended on it; because it makes a cancellation mark, which at the will and for the convenience of the defendant, is made in advance of satisfaction of the ticket, equivalent to a real satisfaction, if for any reason part of the journey is postponed for a later train, and will bear no excuse for relief from the alleged forfeiture; but this is a suggestion aside of the point in issue.

" The defendant's counsel argue that the ticket constituted a contract with this rule of forfeiture implicitly incorporated in it; and this is the proper way of regarding it; but people do not make contracts without knowing their terms, and the law does not consider terms as implied, unless, because of the general customs of the country, or special usages of trade known to the parties, they are to be considered as intended by both parties.

" Much reliance is placed upon the punch mark made by the conductor as meaning cancelled, but it did not mean that he could ride no farther, and how could the plaintiff know that it meant that he must stay on that train ? How should he know that each conductor had a different form of punch ? How could the plaintiff read the meaning of that punch ? Most probably he considered it a private mark of the conductor, and then modesty or propriety, if not want of time, would forbid him to inquire about its meaning.

" [I have said this much, gentlemen of the jury, that you may the better understand and appreciate the principle that you are to apply. It is this, assuming the rule relied on as proved, it does not bind the plaintiff unless it was, in some way, known to him before he transgressed it."]

The verdict was for the plaintiff for $495. The defendants took a writ of error, and assigned the parts of the. charge in brackets for error.

*D. A. McCoy* (with whom were *McCrosby* and *Douglass*), for plaintiffs in error,—cited: Dietrich *v.* Penna. R. R., 21. P. F. Smith 432; 1 Redfield on Railways 100 in note, 101, 102; Beebee *v.* Ayres, 28 Barb. 275.

*Roe Reisinger* (with whom was *A. B. Richmond*), for defendant in error.—Usages are primarily for the convenience of the trade itself, and others are not bound by them, except so far as they know and may be presumed to accept them: Zemp *v.* W. & M. Railway, 9 Richardson 84; 2 Redfield on Railways 232, sec. 13; Powell *v.* P. R. R. Co., 8 Casey 414; Angell & Ames on Corpo-

[O. C. & A. R. Railway Co. v. Clark.]

rations 381; Great Western R. Co. v. Goodman, 12 C. B. 313; Chenney v. Boston and Maine R. R., 11 Metcalf 123. The passenger having done no unusual or negligent act in stepping from the car while the train was standing still, and his being left, purely an accident, his non-compliance with the rule was no fault of his. And when he took passage on the next train, had not the conductor full power, and was it not his duty in the emergency, to have accepted the plaintiff's ticket? O'Donnell v. Allegheny Valley Railroad Co., 9 P. F. Smith 239.

The opinion of the court was delivered, November 4th 1872, by
Agnew, J.—This case was heard and decided by the learned president of the court below, before the decision of this court, at Harrisburg in May last, in case of Deitrick v. The Penna. R. R. Co., 21 P. F. Smith 432. The principles there ruled govern the question before us, and require a reversal of the judgment below. A ticket such as that printed in our paper-book imports upon its face no right to stop off, or in other words to make the journey, between the points named in it by stages, and by different trains. It is simply a ticket from the station called Miller Farm to Oil City, and imports nothing but a single and continuous trip. If a privilege of stopping off and continuing the trip at a subsequent time and by a different train exist, it is only by the rule or sufferance of the carrier, who having commenced the performance of his part of the contract of carriage has a right to pursue it to completion. This shows that the argument that notice of the terms of the rule permitting the passenger to stop and get upon another train must come from the company, is unsound. As the ticket imports a continuous passage, the company having undertaken and commenced its performance, it is evident that it lies on the passenger holding such a ticket to inquire whether a rule to suffer him to change the terms of his ticket exists, and what are the conditions of the exercise of the privilege. He must ask for his stop-off, and exercise the privilege upon the conditions imposed; and this is usually by obtaining a stop-off ticket, to be presented to the conductor of the next train. Of course we must be understood as treating of a case such as that before us, where no custom or general license of the company has been shown. This license to stop off at pleasure is sometimes given by some companies, or given upon certain trains. The effect of such a license, it is not our purpose now to treat of. But to hold that the passengers on every train have a right to stop and get on at pleasure, and that they are not bound by the terms of getting off unless notice can be shown by the company, would in effect take the government of their trains out of the hands of the company. This subject has been so fully discussed in Deitrick v. Penn'a. R. R. Co., we shall not pursue it further.

Judgment reversed, and a *venire facias de novo* awarded.