## Robb *v.* Railway Company.

*Railroads—Ejection of passenger—Mileage ticket—Cause of action—Proximate cause.*

A passenger, owner of an exchange mileage ticket, may not recover in trespass for an ejection from a train where he presented the mileage ticket alone without the necessary exchange ticket called for by the contract. The fact that he could not procure the exchange ticket owing to negligent attendance of the ticket agent does not entitle the passenger to claim a passage without such exchange ticket contrary to the contract and he may not assign his ejection from the car as a cause of action, of which ejection the failure to furnish the ticket was not the proximate cause.

*Contract—Railroad—Reasonable regulations.*

A railroad company may make all reasonable rules regulating special tickets and a passenger may not board a train and demand a passage upon presentation of a contract which upon its face denies him the right to transportation unless accompanied by further evidence, and the conductor was within the limits of his legal duty in ejecting him after opportunity and refusal to pay his fare.

*Ejection from train—Measure of damages—Neglect to provide exchange mileage tickets.*

Negligent delay in furnishing the exchange ticket called for by a mileage ticket does not enlarge the contract or change its terms. For a breach of such contract the suit must be on the contract and the damages measured by the usual rule based on the results of such delay.

Damages for ordinary breach of contract cannot be inflated at will by the party injured illegally boarding a train and inviting an ejection therefrom.

Argued April 25, 1900.   Appeal, No. 109, April T., 1900, by defendant, in suit of C. Robb against Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1898, No. 535, on verdict for plaintiff.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.   Opinion by W. D. PORTER, J.

Action of trespass.   Before KENNEDY, P. J.

The facts sufficiently appear in the opinion of the court.

Defendant submitted among others the following point:

[That under the evidence in this case the verdict must be for defendant. *Answer:* Refused.] [1]

The court below charged the jury, inter alia, as follows:

[Now if, as the plaintiff claims here, he presented this ticket a reasonable length of time at the ticket office before the train came, time reasonably long enough for the agent to make out this other ticket, as required by the contract, then it was the duty of the company to have an agent there in the ticket office to make out the other ticket for him, to enable him to ride to Burgettstown.   And if they had no agent there, and there was a sufficient length of time in which this new ticket could reasonably have been made out, if the agent had been there to attend to his duty, then the company was at fault, and the plaintiff is entitled to recover in this action.] [2] . . . .

[So the question for you to determine is, whether there was a sufficient time for the agent to give Mr. Robb this new ticket, after he presented the interchangeable ticket at the window; whether there was a reasonably sufficient length of time for him to make out the new ticket to enable him to go to Burgettstown; if there was, then it was the duty of the company to have

the agent there for the purpose of making the ticket out, and if he was not there, and did not come until it was too late to make out the ticket, then the company is liable in this action. But if Mr. Robb, as the company claims, did not reach there a sufficient length of time to enable the agent to make out the new ticket for him, then the company is not liable. It was his duty to present this ticket there, and give the agent a reasonable time in which to make out the new ticket. There is a great deal of red tape about this and it requires some little time, as the agent explains to you, to make out the new ticket, counting the number of miles, and the making out by him, the agent, of the new ticket. All that requires some time, and it is for you to say whether, under this testimony, there was a reasonably sufficient length of time for the agent to make out the new ticket, after Mr. Robb presented this at the window. If there was it was the duty of the company to have the ticket made out for him; but if there was not, if Mr. Robb did not present it a sufficient length of time for the agent to reasonably make out this new ticket, he cannot recover in this action and your verdict must be for the defendant.] [3] . . . .

[If you should find that there was time, and that there was no agent there to make out this ticket, or in other words, under the instruction I have given you, if you should find the company is liable, then the measure of damages will be what you will consider a fair compensation or allowance to this man for the inconvenience of being put off the train, and the mortification and the humiliation to which he was subjected by reason of being put off the train. There is to be no recovery or allowance for any loss of time to this man, or loss of engagements, or anything of that kind, because no testimony has been offered to show that he lost any time or lost any engagement. . . . There is no measure that I can give you, it is solely for you to determine what will be a fair compensation or allowance to him for this inconvenience, humiliation and mortification; that will be your verdict in favor of the plaintiff, if you should find, under the instructions I have given you, that the company failed to discharge its duty in not having the agent there, as claimed by the plaintiff, to make out the new ticket for him.] [4]

Verdict and judgment for plaintiff for $400. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant. (2–4) to portions of the judge's charge, reciting same.

*W. S. Dalzell,* with him *Scott & Gordon,* for appellant.— That a railroad company has the right not only to impose reasonable regulations as to the amount of fare required, the time, place and mode of payment, but also to sell tickets under express conditions limiting the passenger's privileges thereunder, is beyond question: 4 Elliott on Railroads, sec. 1598; Reese v. Railroad Co., 131 Pa. 422; Dietrich v. Railroad Co., 71 Pa. 432.

As a general rule, the passenger's ticket is the only evidence, as between him and the conductor, of his right to transportation. He must produce it when demanded, and if he has no ticket or fails to exhibit it in accordance with the rules of the company and refuses to pay fare he may be expelled: 4 Elliott on Railroads, sec. 1594.

This rule seems to be well settled, not only by our own supreme court, but by the great weight of authorities: Reese v. P. R. R., 131 Pa. 422.

Probably the leading cases on the subject are Pouilin v. C. P. R. R., 52 Fed. Rep. 197, and Frederick v. R. R., 37 Mich. 342.

*W. A. Hudson,* for appellee.—While it is true that the railroad company in the sale of tickets like the one in question has a right to prescribe reasonable rules and regulations for the conduct of its business, yet when the same company accepts the ticket itself in place of a continuous passage ticket described in the contract, the said plaintiff had a right to presume when he entered the train that the ticket which he then had was a good and valid ticket, would be accepted in payment of his fare, and thereby became a passenger and should be treated as such: Lake S. Ry. v. Greenwood, 79 Pa. 373; Railroad Co. v. Bambrey, 2 Monaghan, 109; 16 Atl. Repr. 67.

OPINION BY W. D. PORTER, J., July 26, 1900:

The plaintiff had purchased, at the office of the Pennsylvania company at Wellsville, Ohio, an interchangeable 1,000 mile rebate exchange ticket, issued by the Central Passenger

Association, which was exchangeable for tickets over the lines of the companies designated in the contract, one of which was the defendant company. The Central Passenger Association represented a number of separate and distinct railroad companies operating independent lines; among the companies composing the association were the Lake Shore, Michigan Central and Pennsylvania lines. The interchangeable mileage tickets in question were sold by the various companies at their ticket offices, to all persons who desired to purchase, the company selling acting as the agent for the other lines in so far as the so-called ticket was available to procure transportation on such lines. The price at which these mileage books were sold was $30.00, but the contract contained a provision that " if the ticket was used in its entirety and exclusively by the lawful owner, and that fact stated by the record pertaining thereto, a rebate of $10.00 would be paid, provided the cover was properly certified and returned to the mileage ticket bureau of the Central Passenger Association, Chicago, Ill., within eighteen months from the date of its issue." This was a reduced rate of fare, available to all who desired to purchase this contract concerning transportation, and was a sufficient consideration to support the covenants of the contract, entered into by the purchaser, imposing limitations and regulations as to the manner in which the right of carriage was to become available. The covenants contained in this interchangeable mileage book which are material to the consideration of this case are contained in the following paragraphs of the contract, signed by the plaintiff: " 1. The original purchaser, whose signature is fixed to the contract bearing the same form and number as this ticket, and who is, therefore, the only lawful owner hereof, is entitled to receive 1,000 miles of transportation in exchange tickets over the lines named in back cover, under the local regulations and subject to all of the conditions of the contract." " 2. This mileage ticket will not be honored on the train or in checking baggage, but must be presented at the ticket office by its original purchaser and lawful owner, and there exchanged for a continuous passage ticket, which will be honored in checking baggage and for passage when presented in connection with this mileage ticket." " 7. In consideration of the rebate to be paid to the original purchaser

and lawful owner of this ticket, he or she agrees to sign his or her name to the contract, and to the mileage stub and exchange ticket when requested to do so by the agent or conductor of any line named hereon.   8. This ticket must be presented to conductor with the exchange ticket received from the ticket agent.   An exchange ticket will not be accepted for passage unless it is accompanied by the mileage ticket upon which it was issued."

The plaintiff on January 11, 1898, being at Collier station, on the line of the defendant company, presented his Central Passenger Association interchangeable mileage ticket to the ticket agent, surrendered the necessary number of coupons and obtained an exchange ticket westward to New Cumberland junction, intending to take an express train eastward from that point which did not stop at Collier station.   The train upon which the plaintiff arrived at New Cumberland junction was due there one minute after the express train going eastward, which plaintiff intended to take, would have arrived if it had been on time, but the express train was behind time and did not arrive until a few minutes later.   The plaintiff testified that he immediately went to the ticket office and found the ticket window open but no person inside the office.   He there presented his mileage book, but there was no person to furnish him with an exchange ticket.   He then went to the door and saw a number of men on the platform and again returned to the window of the ticket office.   After he had thus been waiting some time, the ticket agent came in and thereupon the plaintiff tendered his mileage book and demanded an exchange ticket, whereupon the ticket agent said : " I can't give you a ticket off that now ; I haven't got time.   There is the train has whistled."   The plaintiff replied, " I have been here time enough to get half a dozen tickets and nobody here to give me a ticket and the window open for doing business."   The ticket agent repeated, " I can't help that ; I haven't got time ; I can't give you a ticket."   The plaintiff then said : " I am going on that train anyway."   Plaintiff did get onto the train without a ticket.   After the train was under way, when the conductor in making his rounds, reached the plaintiff the latter presented his interchangeable mileage book.   The conductor informed him that he could not accept this mileage book on

the train.    The plaintiff said, "I cannot help that; here is my
fare.    I have $30.00 invested in this book; my fare is paid at
two cents a mile, and I don't propose to pay three cents a mile
when my fare is already paid at two cents a mile."    The con-
ductor refused to accept the mileage book and demanded that
the plaintiff pay his fare, which the latter refused to do.    The
conductor notified him that unless he paid his fare he would
have to put him off, but the plaintiff still declined to pay fare.
When the train arrived at Collier station it was stopped and
the conductor motioned for the plaintiff and said this was the
place to get off, and thereupon the plaintiff left the train and
subsequently brought this action in trespass to recover damages
for the alleged wrongful expulsion from the train.    The agent
of the defendant company at New Cumberland junction testi-
fied that there was only three minutes' time between the de-
parture of the train by which the plaintiff arrived and the ar-
rival of the east-bound express train, on which plaintiff wished
to depart, and that he, the agent, was busily engaged in taking
care of the baggage and mail matter which had come in upon
the same train with the plaintiff, and further, that it required
considerable time to make out the exchange tickets required
under the mileage book contract, and that he did not have
sufficient time to make out such ticket.

The learned court below was of opinion that the whole case
depended upon whether there was, after the moment when the
plaintiff first presented his mileage book at the ticket office, a
sufficient time to have made out an exchange ticket prior to
the actual arrival of the train, if the ticket agent had been actu-
ally at his window.    The language of the learned judge was:
"So the question for you to determine is whether there was a
sufficient time for the agent to give Mr. Robb this new ticket,
after he presented the interchangeable ticket at the window;
whether there was a reasonably sufficient length of time for him
to make out the new ticket to enable him to go to Burgettstown;
if there was, then it was the duty of the company to have the
agent there for the purpose of making the ticket out, and if he
was not there, and did not come until it was too late to make
out the ticket, then the company is liable in this action."    This
portion of the charge and the refusal of the court to grant
the prayer of the defendant for a binding instruction, cover

all the assignments of error.  The jury having found that there
was a reasonably sufficient time to have made out such an ex-
change ticket after the presentation of the mileage book at the
ticket office, we must assume that there was a breach of the
contract entered into by the agent of the defendant company,
on its behalf, to furnish an exchange ticket good for transporta-
tion over its lines.  The rights of the plaintiff under such cir-
cumstances did not involve any regulation of the company or a
lack of knowledge thereof by the plaintiff, and are not to be de-
termined by the same principles which governed in Railway
Company v. Greenwood, 78 Pa. 373.  The plaintiff fully under-
stood his rights under the contract which he had signed and
was not deceived as to the character of the ticket which he held
by the mistake of any agent of the defendant company, and for
that reason the case of The Railroad v. Bambrey, 2 Monaghan,
109, does not apply.  No rule or regulation of the company,
limiting the rights of the plaintiff under the express terms of
his contract, was invoked by the conductor when he expelled
the plaintiff from the train.  The rights of the plaintiff are to
be determined, therefore, under the express terms of his con-
tract.  The breach of the contract, if there was any, involved
in the failure of the ticket agent to make out an exchange ticket
in time, consisted simply in the failure to furnish that exchange
ticket.  The result of the failure to furnish the exchange ticket
was that the plaintiff could not avail himself of the advantages
to be derived from using his mileage book upon that journey.
If, because of such failure to furnish an exchange ticket, he was
compelled to wait until the next train in order to use his mileage
book, the measure of damages would be the delay which re-
sulted from the breach of the contract.  As soon as the breach
of contract occurred it was the duty of the plaintiff to take such
steps as reasonable care and foresight require, under the circum-
stances, to prevent an undue inflation of the damages arising
from the breach.  If it was necessary that he should proceed
by the train which was then approaching, he could buy a gen-
eral passenger's ticket; or, if he did not have time to do that,
he could take the train and pay his fare; in either of which
cases the measure of damages would be the additional expen-
diture involved in making the journey in this way.  The fail-
ure of the company to furnish an exchange ticket, because of the

neglect of the ticket agent to be at his window, did not enlarge the contract nor change its terms; if the plaintiff was injured he had his right of action, but he still remained bound by every covenant into which he had entered. The right of a railroad company to make reasonable regulations, not only as to the amount of fare, but as to the time, place and mode of payment, is unquestionable. This right includes the right to refuse altogether to carry without the previous procurement of a ticket. And so such a company has the right to make a regulation that special tickets only shall entitle the holder to transportation by certain trains. They have the power to make a regulation that excursion or special tickets shall only be available for transportation upon particular trains and subject to peculiar conditions, which, if not complied with, would warrant an expulsion of the passenger: Railway Company v. Rosenzweig, 113 Pa. 519; Reese v. Penna. R. Co., 131 Pa. 422. A contract is made between the parties when the passenger purchases his ticket. The ticket may not embody the whole contract, which must be gathered, so far as not expressed, from the rules and regulations of the company in running its trains; but so far as the terms of the contract are expressed, they are binding not only upon the railroad company but upon the passenger. When his contract, under the circumstances under which he attempts to use it, does not give him the right to ride, the company may lawfully eject him in a proper manner and at a proper place: Dietrich v. Penna. R. Co., 71 Pa. 432; Railway Company v. Clark, 72 Pa. 231. In this case the mileage ticket or contract which the plaintiff presented to the conductor, and upon which he now brings this action, declared upon its face that it was not within itself a contract of carriage. The plaintiff when he boarded the train knew that his contract contained this provision, viz: "This mileage ticket will not be honored on the train, nor in checking baggage." He knew that this mileage book must be presented in connection with an exchange ticket, and he knew that if the conductor of the train permitted him to ride to his destination, he would be violating his duty. The presumption that the plaintiff knew the contents of the contract which he had signed is conclusive, but the plaintiff testified that he had already used the book in the manner required by the contract at Collier station, and that he had again demanded

an exchange ticket at New Cumberland junction, so that it is not necessary to rely upon the mere presumption of his knowledge. The provisions of section 7 of the contract, with regard to the passenger signing the mileage stub and exchange ticket when required by the ticket agent or the conductor, were for the purpose of identification of the passenger as the person who was the original purchaser of the ticket. All these provisions for the identification of the passenger who presented himself as the person who had originally purchased the ticket, were for the purpose of making up the record referred to in the 6th section of the contract, in order to determine whether or not the holder of the ticket was entitled to the $10.00 rebate, upon the return of the cover of the ticket after the mileage had been used.

The question is, therefore, simply upon a breach of the contract for carriage, and depends upon its terms. If the contract upon which the plaintiff relies was not in itself a contract for carriage, then he is not entitled to recover in the present action, nor for the injury of which he complains. Stress is laid on the fact testified to by plaintiff that he had been permitted to ride from the outer station at Steubenville, where there was no ticket office to Collier station without first obtaining an exchange ticket. This is directly in the teeth of the written agreement and could not operate to extend and free from all restrictions the rights of the plaintiff thereunder. If one conductor violated his duty by permitting the plaintiff to ride upon the faith of his mileage book alone, that clearly could not bind all the conductors upon the other trains of the road: Beebe v. Ayres, 28 Barb. 278; Dietrich v. Railroad Company, supra. If the plaintiff had shown a regulation of the company authorizing the use of his mileage book in the manner in which he attempted to use it, under the circumstances in which he was placed, he would have had a right to board the train, and would have had standing to maintain his action. In the absence of such evidence he is thrown upon his contract, and the terms it imports or recognizes as the evidence of his right of transit over the defendant's road. The contract upon its face denies him the right to transportation unless accompanied by other and further evidence. It was not a contract for carriage in any sense of the word, although it was a contract concerning transportation. The agreement of the railroad company

was to furnish exchange tickets over its lines, subject to all the conditions of the contract, and the mileage book was not to be honored on the train, nor in checking baggage. The obtaining of the exchange ticket and exhibition of it to the conductor was a condition precedent to the plaintiff's right to ride. He knew this fact when he took his seat in the car. The conductor very properly declined to permit the plaintiff to ride unless he produced an exchange ticket, but he did not arbitrarily expel the plaintiff from the train without giving him an opportunity to pay his fare. When the conductor offered the plaintiff the alternative of paying fare or leaving the train, the latter elected to leave the train, and now seeks to recover damages in an action of trespass, because of the failure of the company to furnish him an exchange ticket. He knew before he boarded the train that an exchange ticket was required; he knew that he had no exchange ticket; yet he determined to take the chances, declined to pay his fare and was very properly expelled from the train. It may be true that the company had violated its contract in failing to furnish the exchange ticket, but that was not the proximate cause of this plaintiff's expulsion from the train ; his own voluntary act in boarding the train. with full knowledge of the conditions, intervened and exposed him to a humiliation, which by refusing to pay his fare he pressed to the utmost limit. Damages for an ordinary breach of contract cannot be inflated at will by the party injured in this manner. There was no evidence of any damage sustained by plaintiff other than the mere order to leave the train and compliance therewith.

We are of opinion that the request of the defendant for a binding instruction ought to have been affirmed, and the judgment is reversed.