## Golden *v.* Pittsburg Railways Company.

*Street railways—Passengers—Carriers—Transfer tickets.*

A transfer ticket of a street railway company is evidence of the contract as made out and punched by the carrier, and if it fails to disclose the true contract, the fault is with the carrier, which is responsible for the natural consequences of variances; and it is immaterial that the transaction for the carriage of the plaintiff was conducted through several conductors instead of one.   Their combined acts constitute but one continuous act of the carrier.

Before the rule of expulsion of a passenger for want of a proper ticket can be made absolute and universal in its application, the carrier must discharge the reciprocal duty of absolute and universal accuracy in issuance of the ticket.   The passenger has a right to believe that the ticket was all that it should be, and if it is issued at a time when it was no use, it is as much a blunder on the part of the conductor as if it had been issued for the wrong route or car.

Where a passenger receives a transfer ticket which is marked not good on night cars, and at the point of transfer attempts to get on four cars in succession, but is prevented by the conductors on the ground that the cars were only going to the barn, and subsequently gets on the fifth car which proves to be a night car, and is excluded therefrom when he presents his

ticket and refuses to pay an additional fare, the company will be liable as for a wrongful exclusion.

Argued April 26, 1905.   Appeal, No. 226, April T., 1905, by plaintiff, from order of C. P. No. 1, Allegheny Co., Dec. Term, 1902, No. 1,028, refusing to take off nonsuit in case of William A. Golden v. Pittsburg Railways Company.   Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.   Reversed.

Trespass for a wrongful ejectment from a street car. Before MACFARLANE, J.

The facts appear by the opinion of the Superior Court.

*Error assigned* was refusal to take off nonsuit.

*James E. O'Donnell*, for appellant.—In construing a special contract embodied in a railroad ticket and limiting a purchaser's rights, language of an uncertain or doubtful meaning should be generally taken in its strongest sense against the company by which the ticket was issued or sold and in favor of the purchaser: Fetter on Law of Carriers of Passengers, vol. 1, chap. 22, sec. 275; Ga. R. R. Banking Co., v. Clarke, 97 Ga. 706 (25 S. E. Repr. 368); Auerbach v. R. R. Co., 89 N. Y. 281.

Besides the contract should be construed so as to prevent a forfeiture if it can be done: Evans v. Ry. Co., 11 Mo. App. Rep. 463.

We contend that even if the company's rule was intended to exclude the use of the transfer for passage upon night cars, and the contract should be so construed, the operation of the rule was subject to the exception where, as here, through no fault of the passenger, he was unable to take what is known as a day-car: Fetter on Law of Carriers of Passengers, chap. 22, sec. 291, p. 743; Wilsey v. R. R. Co., 83 Ky. 511; Auerbach v. R. R. Co., 89 N. Y. 281; Stone v. Ry. Co., 47 Iowa, 82; Heffron v. Ry. Co., 92 Mich. 406 (52 N. W. Repr. 802).

*James C. Gray*, with him *Clarence Burleigh* and *W. A. Challener*, for appellee.

OPINION BY ORLADY, J., July 13, 1905:

On October 14, 1902, the plaintiff, who is a member of the Allegheny county bar, boarded, about eleven o'clock, P. M., a car of the Pittsburg Railways Company at Sharpsburg, going in the direction of his home, in the city of Pittsburg. He paid the usual fare of five cents, and at the intersection of Butler street and Penn avenue, received a transfer slip from the conductor, providing for passage over another division of the system, and then boarded another car going in the direction of his travel and delivered to that conductor his transfer ticket. At Center avenue and Craig street, he was obliged to make another transfer. Before leaving the car, at 12:05, he received from the conductor a transfer ticket for passage on the next division, and to his residence. Within a few minutes he attempted to board the first car going in the desired direction, but was stopped on the step by the conductor, who noticed the transfer ticket in his hand, and was told, " This car only goes to the barn," or words to that effect, and admission to the car was refused him. This same incident occurred as he attempted to board four cars in succession.

The plaintiff was lightly clad, the weather was inclement, the mercury standing at forty degrees above zero, and a high wind blowing. About 12:35 he boarded a car going in the direction of his home, and when he was at Grant boulevard intersection, the conductor accosted him for his fare. When the transfer was exhibited, the conductor replied: " That don't go. This is an all-night car." The plaintiff explained to the conductor that he had taken the first car that he was allowed to board at the intersecting point, and that the transfer ticket had been given to him at the hour that it was marked, without any default of his. The conductor insisted, however, that he must pay double fare, or get off, and reached for the bell rope to signal the car to stop. Without further resistance he withdrew from the car and was obliged to walk about two miles to his home. Following the exposure he suffered physical ills for several weeks, the particulars of which are not material as the case is now presented.

The transfer slip or ticket was offered in evidence by the plaintiff and among the rules and regulations printed on its back, is the following clause : " This transfer is good only for

passage, to whom issued, for a continuous trip, in the direction punched, on the first car of the route to which issued, leaving the transferring intersection, after the time punched, on date issued. Not applicable to night cars."

The plaintiff's statement avers two trespasses. First: The refusal of the defendant's agents, the conductors of the four cars, to allow the plaintiff to ride thereon. Second: The ejection of the plaintiff from the car which he entered, and refusal to accept in payment of his right to ride on the car, a transfer slip or ticket, which had been issued to him, by another conductor of the defendant. On motion of defendant's counsel, the court entered a compulsory nonsuit (and subsequently refused to take it off), for the reason, as stated, that the transfer slip in evidence was good only on the first car of the route to which issued at the transfer intersection, at the time punched, on the date issued, and that it was not applicable to night cars.

The transfer slip is a printed ticket complicated by being subdivided into over sixty divisions, indicating directions, year, month, day and hour, and so designed that a punch or mark will indicate the time of issue by the conductor, each hour being divided into six parts representing ten minutes each. The ticket before us denoted that it was punched on October 14, at twelve o'clock, P. M. What is meant by the words " night cars " to which the transfer is not applicable, does not appear. Whether it was a car that passed an intersection after a fixed hour during the night-time or after midnight, is not suggested. It is certainly indefinite, uncertain and ambiguous, and requires some explanation as to its meaning. Nor is there anything in the evidence adduced on the trial to show that the four cars, from which the plaintiff was excluded, would not have taken him to his home, or to within a reasonable distance from it, neither is the location of the car barn shown.

It has been frequently decided that the rule which requires a passenger to exhibit a ticket entitling him to the ride desired, or else to pay fare, is a reasonable one, and if not complied with, the passenger may be ejected.

A ticket is evidence of the contract as made out and punched by the carrier, and if it fail to disclose the true contract the fault is with the carrier, which is responsible for the natural consequences of variance; it is immaterial that the transaction

for the carriage of the plaintiff was conducted through three conductors, instead of one. Their combined acts constitute but one continuous act of the carrier. It was a ticket authorized to be issued and delivered to the passenger by the proper agent. The plaintiff in this case did all that was required of him to do under the terms of the contract and he was only prevented from reaping the benefit of his contract by the fault or willful act either of the three conductors who refused him admission to their several cars, or of the conductor who ejected him.

The plaintiff was entitled to passage on either of the first three cars, which were conceded at bar to have been the kind of car the ticket he held would have entitled him to ride upon. The terminal point was not material. He was refused admission to these cars at a proper place and at a proper time, and having in his hand the evidence of fare paid.

The punch on the ticket may have been good in settlement between the conductor and the auditors of the company, but if, as contended, all-night cars refer only to cars running after twelve o'clock midnight, it was issued at a time when it was absolutely valueless, as impossible of being used, it being for a continuous trip in the direction punched on the first car of route to which issued. It was worthless on any other date or at any other time. It was evidently intended to be of some value to the plaintiff when delivered to him by the conductor at 12 : 05 A. M. (though punched at 12 M.) and to hold arbitrarily that it was not applicable to night cars, without in any way defining or explaining that expression, would be to justify the company in doing a meaningless, as well as a misleading act.

Before the rule of expulsion for want of a proper ticket can be made absolute and universal in its application, the carrier must discharge the reciprocal duty of absolute and universal accuracy in issuance of the ticket. The plaintiff had a right to believe the ticket was all that it should be, and if it was issued at a time when it was of no use, it was as much a blunder on the part of the conductors as if it had been issued for the wrong route or car: O'Rouke v. Street Railway Co., 46 L. R. A. 614 ; Laird v. Traction Co., 166 Pa. 4.

That the plaintiff withdrew from the car without resorting to violence is to his credit rather than a bar to his right to recover. A car filled with passengers, often women and children,

is no place for a quarrel between a conductor and passenger, and it would be unwise as well as dangerous to the traveling public to approve of any rule which might encourage a resort to force, under such circumstances. The plaintiff could not in any sense be called a trespasser; and if from accident or misfortune the cars were delayed, and without his own fault, his transit was interrupted, or more than ordinarily delayed, so as to prevent his making a schedule connection with even what is called a night car, or an all-night car, he was entitled to resume his journey on the first car going in his direction from that intersection: Fetter on Law of Carriers of Passengers, chap. 22, p. 743, sec. 295, p. 748; Dietrich v. Penna. R. R. Co., 71 Pa. 438.

Under the facts as presented, the plaintiff was entitled to have the case passed on by a jury and the nonsuit was improperly entered.

The judgment is reversed and a new trial awarded.