## Weaver *versus* Craighead.

1. In an action at law, the testimony of a single witness to establish a controverted point should be submitted to the jury, no matter how flatly it is contradicted.

2. A., the holder of the legal title, took a lease from B., the holder of the equitable title, the rent accruing to be credited on the balance due of the purchase money, and, remaining in continuous possession, conveyed the premises to C. *Held*, in an action of ejectment against A. and C., that both were estopped from denying the right of the purchasers from B.'s assignee to recover possession because the balance of the purchase money due from B., was not tendered before suit brought.

3. An advertisement of the sale of property in a newspaper and by handbills, unknown to the party sought to be affected by it, does not amount to notice, nor is it competent testimony as a makeweight in support of an allegation of fraud.

October 15th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Washington county :* Of October Term 1883, No. 30.

Ejectment, by James Craighead et al., doing business as The Farmers' Deposit Company, against J. P. Weaver and Alexander Gaston, for a tract of land in North Strabane township, Washington county. Plea : not guilty.

On the trial, before HART, P. J., the following facts appeared : On and prior to January 27th 1876, the title to the premises in dispute was vested in J. P. Weaver. On that day by articles of agreement under seal, and signed by both parties he contracted to sell the land to Samuel Chamberlain, a harness maker of Canonsburg, for $1,500, payable as follows : Eight hundred dollars to be paid in harness or buggies, or anything in the second party line, at the lowest cash market price, to be delivered on orders from (this date forward) from the parties of the first part, by the party of the second part.

On the first day of May, 1876, the party of the second part agrees to pay to the party of the first part, five hundred dollars, also to make him a title clear of all incumbrance to forty acres of land situated in Waubamsee county, Kansas, at which time the part of the first party agrees to make to the party of the second part, a title to said house and lot, clear of all incumbrance, and also give full possession.

Chamberlain conveyed his Kansas property to Weaver and paid to him $250 on May 15th 1876, thus leaving $250 due as the balance of the cash payment. Chamberlain testified that he then agreed with Weaver that he was to retain the balance, and pay interest thereon, and that Weaver was to retain possession of the premises and pay rent at the rate of five dollars a

[Weaver v. Craighead.]

month until he (Weaver) could build another house for himself, the rent so accruing to be credited on the balance of the consideration due. The length of time during which this agreement was to continue was not specified. Weaver, however, denied the whole of this testimony explicitly. The articles of agreement were never recorded, nor indeed made nor possession given in pursuance of it. The total amount of the consideration paid in harness, &c., was $255 ; thus leaving due in goods $545 and cash $250 as above stated.

Chamberlain made an assignment for the benefit of his creditors on July 12th 1876, and removed to Pittsburgh. The assignee advertised Chamberlain's interest in the property for public sale, in the Canonsburg Herald and by handbills. They failed to sell it at public sale and afterwards sold it to the plaintiffs for $50 at private sale. The deed to the plaintiffs was dated January 27th 1877 and recorded April 7th 1877.

Weaver being still in possession of the premises conveyed the same to Alexander Gaston, his brother-in-law, by deed dated March 5th 1877 and duly recorded the next day, for the consideration of $950.

The suit was first brought against Weaver who remained in possession after his conveyance to Gaston, but the latter was on his petition admitted as a defendant. Gaston testified that he met Weaver in Washington and he offered to sell him the property. Weaver had the deed already prepared and acknowledged, and said that there was nothing against the property. They had never had any previous conversation about buying the property. Gaston examined the records and found them clear, so he took the deed and had it recorded that day, paying $100 of the consideration down and the balance a day or so afterward. Gaston testified that he did not take the Canonsburg Herald, had not seen the handbills of sale, and did not know anything of the title of the plaintiffs until after he had paid for the property.

Plaintiffs offered to prove by McConnell, one of the assignees of Chamberlain for the benefit of his creditors, " that Alexander Gaston having sworn that he had no notice of this property having been sold to Chamberlain, the purpose is now to show that the property was advertised, and the handbills scattered all over the county." Objected to by defendant, because the offer does not show any direct knowledge brought home to Gaston of these advertisements or handbills.

Objection overruled. Exception. (Eighth assignment of error.)

Plaintiff presented, inter alia, the following points :

(1.) The construction of verbal contracts is for the jury, and therefore it is for them to determine upon the evidence whether

8 OUTERBRIDGE.—19

[Weaver *v.* Craighead.]

J. P. Weaver became the tenant of Samuel Chamberlain in May 1876.

Answer. Affirmed. (First assignment of error.)

Defendant presented, inter alia, the following points :

(10.) That the plaintiffs in this case, claiming title under the articles of agreement between Chamberlain and Weaver, and seeking to enforce a specific performance of that contract, were bound in equity to pay or tender the full balance upon said contract in cash, before bringing this suit, and if the jury find from the evidence, that this was not done, their verdict must be for the defendant.

Answer. This is true, and the plaintiff cannot recover in this action, unless, as I have said, there is, in the opinion of the jury, clear and satisfactory proof of the alleged tenancy of Weaver; and also that the evidence clearly establishes to the satisfaction of the jury, that the purchase of Gaston from Weaver, was fraudulent and collusive. Exception. (Third assignment of error.)

(11.) That the only title which the plaintiffs have shown to the land in dispute, is an equitable one which could not be enforced in an action of ejectment at common law, and is only allowed under our blended system of law and equity in Pennsylvania, where the plaintiffs show such performance as entitles them to a legal title, and as the plaintiffs here do not claim that they have or are entitled to have the legal title, they cannot recover in this action. Refused. (Fourth assignment of error.)

(12.) Taking all the testimony of Samuel Chamberlain as to the agreement of Weaver to pay $5 per month rent for the time he remained in possession after May 1st 1876 as true, it does not establish such a tenancy as would enable Chamberlain or his vendees to recover the land in dispute until they have paid the amount which they were required to pay under the articles of agreement of January 27th 1876.

Answer. Refused. The question is one of fact for the jury to determine, under the instructions already given. (Fifth assignment of error.)

(13.) Even if the jury believe that Weaver agreed to pay Chamberlain $5 per month as rent for the premises for the time he remained in possession after May 1st 1876, this in itself was no waiver of his and his vendee's right to hold possession of the land after the determination of such lease until Chamberlain or his vendees should pay the purchase money which was to be paid by the terms of the agreement under which they claim title, before such possession was to be delivered.

Answer. This also is a question of fact for the jury under

[Weaver v. Craighead.]

instructions of the general charge.     (Sixth assignment of error.)

(5.) That the evidence of William McConnell, that Chamberlain's interest in the land in dispute had been advertised at public sale in the Canonsburg Herald, and by printed handbills, without any proof to show that Gaston, the subsequent purchaser, ever saw or read the paper or handbills, is too general, uncertain and indefinite to destroy Gaston's title, and the jury are not warranted in inferring notice from such evidence.

Answer.  It is proper evidence as explained in the general charge on the question of actual fraud.  The weight of the evidence is for the jury.  (Ninth assignment of error.)

The court charged the jury, inter alia, as follows: "Now the rule of law where that relation is established is, that the tenant, unless he has been tricked into taking a lease by some fraud, is not allowed to dispute his landlord's title; and hence, if Weaver became the tenant of Chamberlain, he could not set up any title in himself or anyone else, superior to the title of Chamberlain.  If he desired to do so it was his duty to retire from the tenancy and bring an action of ejectment against Chamberlain.  But, gentlemen, the duty of the plaintiff here is to establish this parol, unwritten lease by clear proof.  If you are satisfied by weight of the evidence of the existence of this lease,—that is to say, that Weaver agreed to become the tenant of Chamberlain, and pay him rent and treat him as a landlord, then, without going further, it would be your duty to render a verdict for the plaintiff."  (Seventh assignment of error.)

"Then, as evidence tending to show that Mr. Gaston had notice of Chamberlain's title, the plaintiff was allowed to prove that the assignees, before they made sale of this property, advertised it somewhat extensively by handbills, which were sent out to the neighboring stores and post offices, the nearest one to Mr. Gaston being at McConnell's Mills, about four miles from Mr. Gaston's residence.  The sale was also advertised in the Canonsburg papers, but not in any Washington paper so far as anyone could testify; and Mr. Gaston swears that the only newspaper he was taking at the time was a Washington paper.  Now, the testimony in regard to the advertisements and handbills, giving notice of this assignee's sale, was allowed as being some evidence upon the question of fraud and collusion already developed by the evidence of Mr. Gaston."  (Tenth assignment of error.)

Verdict and judgment for the plaintiffs, whereupon defendants took this writ, assigning for error the answers to the foregoing points, the admission of plaintiff's offer of testimony and those portions of the general charge above noted.

[Weaver *v.* Craighead.]

*J. W. Donnan* and *A. Donnan*, for plaintiffs in error.—
The defendants in error are not entitled to recover the land by
virtue of the agreement of January 27th 1876, because of their
failure to pay or tender the balance due upon the contract.
But it is contended that Chamberlain's testimony established
the relationship of landlord and tenant between Weaver and
himself, and thus estopped Weaver and his vendee from assert-
ing any title to the land under the agreement of sale.    Assum-
ing the testimony to be true, it raised a question of law for the
court, not of fact for the jury : Keating *v.* Orne, 27 P. F.
Smith 89 ; Lewis *v.* Carstairs, 5 W. & S. 205.    The plaintiffs,
relying upon an estoppel, must show every element necessary
to constitute it : De Haven *v.* Landell, 7 Casey 120 ; Groft *v.*
Weakland, 10 Casey 304 ; especially in this case, where the
estoppel claimed is purely equitable, arising from the particu-
lar facts and circumstances by which the relationship of land-
lord and tenant was constituted : Den *v.* Ashmore, 2 Zab. 264 ;
2 Smith Lead. Cases 657–8 ; Bigelow on Estoppel 371.    Now,
the $5 monthly rent was to be allowed as a credit on the pur-
chase money and interest ; the parties did not contemplate its
actual payment, nor did they intend to change their positions
as vendor and vendee.    No estoppel can arise out of such a
bare promise of a person in possession of land to pay rent to
one who has neither title, possession nor the right of possession :
Fuller *v.* Sweet, 30 Mich. 237 ; Hall *v.* Benner, 1 P. & W. 402 ;
Stokes *v.* McKibben, 1 Harris 267 ; Cornish *v.* Searell, 8 B. &
C. 471 ; Rogers *v.* Pitcher, 6 Taunt. 202.    Nor could Cham-
berlain disavow Weaver's title until the purchase money had
been paid in full : Bigelow on Estoppel 414, 415 ; Bush. *v.* Mar-
shall, 6 How. 284 ; Galloway *v.* Finley, 12 Peters 264 ; Wil-
lison *v.* Watkins, 3 Peters 43 ; Carpenter *v.* Thompson, 3 N.
H. 204 ; Meyers *v.* Hill, 10 Wright 9.    Testimony that the
property in dispute had been advertised for sale by Chamber-
lain's assignees, without proof that Gaston ever saw or read the
advertisements, was inadmissible to prove notice, or as evidence
tending to show fraud : Lincoln *v.* Wright, 11 Harris 80 ; Beltz-
hoover *v.* Blackstock, 3 Watts 20 ; Union Co. *v.* Bushnell, 7
Norris 89 ; Kellogg *v.* French, 15 Gray 354.

*M. C. Acheson* (with whom were *A. W. Acheson* and *I. Y.
Hamilton*), for defendants in error.—The evidence of the ten-
ancy was rightly admitted to the jury : McFarland *v.* Newman,
9 Watts 59 ; Boyer *v.* Smith, 3 Watts 449.    The evidence of
the advertisement of the sale of Chamberlain's interest in the
property was not admitted as proof of notice, but was allowed
to go to the jury in the evidence of the relationship and other
suspicious circumstances in the question of fraud : Trefts *v.*

[Weaver v. Craighead.]

King, 6 Harris 157 ; Lead. Cases in Equity 148, 149 ; Walter v. Gernant, 1 Harris 517.

Mr. Justice TRUNKEY delivered the opinion of the court, November 12th 1883.

On May 1st 1876, upon the payment of $500, and the conveyance of forty acres of land, situated in Kansas, Weaver was bound by his covenant to convey the lot in controversy to Chamberlain, and give full possession. Soon after that date Chamberlain paid $250, and conveyed the forty acres to Weaver. Then, if Chamberlain's testimony is true, by oral contract, he rented the lot to Weaver for $5 per month, until such time as he should build a house ; no specified time ; and Weaver extended the time for payment of the remaining $250 for an indefinite period. It was competent for the parties to so agree, and the verdict establishes that they did, for the present consideration. The court was bound to submit the testimony, no matter how flatly contradicted ; whether there was a contract, and what its terms were for the jury to determine. In equity to establish a claim that is denied, two witnesses, or the equivalent of two, are necessary ; but this claim under the alleged lease is at law. The first, fifth, and sixth assignments are not sustained.

For many purposes the possession of Weaver was the possession of Chamberlain. Taking a lease was an acknowledgment of the landlord's right of possession. Chamberlain had the equitable title upon which he could have recovered possession in an ejectment, after tender or payment of all the purchase money that was due. Had Weaver not become his tenant, Chamberlain would probably have paid the balance and required possession. In violation of his written contract with Chamberlain, and of the oral lease, Weaver sold and conveyed the land in fee simple to Gaston. Now, he cannot restore possession if he would, for Gaston claims to be an innocent purchaser. There are no peculiar equities to except this case out of the general rule that a tenant is estopped from denying his landlord's title. Had Weaver been honest and fair, and remained in position to convey and give possession on receipt of the purchase-money, it would be doubtful if his case would then be an exception to that rule ; now, it is against equity that he should deny the plaintiff's right to recover possession because they did not tender the purchase-money before bringing suit. He cannot complain of the matters set forth in the third, fourth, and seventh assignments.

But one question remains that need be noticed, namely, the admission of testimony that Chamberlain's interest in the property was advertised for sale in a newspaper and by handbills

[Commonwealth *v.* Ruth.]

without evidence that Gaston had knowledge thereof and submitting such testimony to the jury as "being some evidence upon the question of fraud and collusion." That, we think, was error. It is well settled that such publication, unknown to the party sought to be affected by it, does not amount to notice. The publication was not made by either Weaver or Gaston, and was not of the res gestæ of their transaction. It was the act of Chamberlain's assignee. If Gaston had knowledge of it he was not an innocent purchaser; if he had no knowledge of it, how can it be evidence that he perpetrated a fraud? The law does not make a publication in the newspapers and by handbills either constructive notice to a purchaser, or evidence that he colluded with the vendor to defraud another person of his rights. If it did no purchaser would be safe. The defendant in error cites Walter *v.* Gernant, 13 Pa. St. 517, and Trefts *v.* King, 48 Id. 157, in support of the position that the testimony was admissible. Neither of these cases touch the admissibility of newspaper or other publications, and in each the testimony adduced to affect the purchaser with fraud was of words and acts by himself, in addition to the circumstances of the sale and purchase : in one the near relationship of the parties was also material. We are not convinced that the acts or declarations of a third person, though a claimant of the property, unknown to the purchaser, and unconnected with his negotiations with the vendor, are competent testimony as a makeweight in support of the allegation of fraud.

The eighth, ninth, and tenth assignments are well taken, and the

> Judgment reversed, and venire facias de novo awarded.