## Commonwealth *v.* Doe, Appellant.

*Street railways—Fares—Rules and regulations—Belt line.*

1. A street passenger railway company operating a belt line exclusively within the limits of a city, may, by a rule and regulation designate a certain point of the line as the end thereof and the end of the trip, and beyond which a passenger cannot ride without paying an additional fare; and this is so even when all persons by taking a car on the same street going in an opposite direction may reach his designation and have by that route a continuous one fare ride before reaching the end of the line.

2. A street railway company has the right to define by a reasonable regulation the length of trip to which the passenger is entitled for his fare. The question whether the regulation is reasonable is a question for the court and not for a jury.

3. Where a street railway company has adopted reasonable rules and regulations as to fares, there is no burden on the company to show that a passenger had notice of such rules and regulations.

4. Where an issue turns on the reasonableness of the regulation of fares the knowledge of the regulation by a particular passenger may be shown by evidence that the regulation had been in operation for many years, that it had always been enforced, and that the passenger in question had some knowledge of the operation of the road.

Argued April 28, 1910. Appeal, No. 165, April T., 1910, by defendant, from judgment of Q. S. Allegheny Co., Feb. T., 1910, No. 227, on verdict of guilty in case of Commonwealth v. John Doe, alias J. W. Webber. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Indictment for violating the Act of June 7, 1907, P. L. 453, relating to street railway fares in cities of the second class.

At the trial counsel for defendant proposed to prove by a witness upon the stand, to be followed by other testimony, that the line upon which the prosecutor took passage, at the date laid in the indictment, was the Fifth, Shady and Penn avenue line; that the end of this line was the corner of Eleventh street and Penn avenue in the

city of Pittsburg; that each and every trip upon the said line at that time was made from the corner of Eleventh street and Penn avenue, out Penn avenue eastwardly to Shady avenue, along Shady avenue to Fifth avenue, along Fifth avenue to Cecil alley, along Cecil alley to Penn avenue, and out Penn avenue to Eleventh street; that when the car reached Eleventh street it was the end of the trip, and the end of the line, and that neither the prosecutor nor any other passenger could ride further than the end of the trip, and the end of the line, to wit, the corner of Eleventh street and Penn avenue, for one fare; and that the Pittsburg Railways Company, the company operating this line, had, and always had, in force a rule and regulation to this effect, and this for the purpose of showing the defendant is not guilty of any offense under this act.

Objected to, by counsel for the commonwealth, because the offer does not propose to show that the point named, to wit, Eleventh street and Penn avenue, is the physical end of the Fifth, Shady and Penn avenue cars, but merely a fictitious point fixed in some manner by the defendant or his employers.

Second, because the trip referred to in the offer is an ideal trip, and not a trip either fixed by physical points of destination or by the intention of the passenger.

Third, because in no event has the street car company (a public carrier) the right to enforce even a reasonable rule or regulation, unless the public be given proper notice of the same.

Fourth, because the Pittsburg Railways Company has no authority, by rules and regulations, to modify a statute of the commonwealth of Pennsylvania.

Fifth, because the alleged modification by rule or regulation is not reasonable.

Sixth, because the testimony proposed is irrelevant and immaterial to the issue.

The Court: There is an admission that this car makes a continuous trip?

Mr. Burleigh: Yes.

The Court: There is no purpose here to prove that this is the physical end of the line?

Mr. Burleigh: No purpose whatsoever; the car perhaps does not even stop at Eleventh street and Penn avenue unless a passenger is to be received or discharged.

Objection sustained. Exception. [4]

Counsel for defendant further proposed to prove, by the witness upon the stand, and by other witnesses, that a complete trip on the line prosecutor took was only from Eleventh street and Penn avenue, Pittsburg, to Eleventh street and Penn avenue, Pittsburg, and said trip ended at the corner of Eleventh street and Penn avenue, Pittsburg.

Objected to, by counsel for the commonwealth, as before, with this addition—it being admitted that the cars on this line do not stop at the destination fixed in the offer, to wit, Eleventh street and Penn avenue, in the city of Pittsburg, except to take on or discharge passengers.

Objection sustained. Exception. [5]

Counsel for defendant further proposed to prove by the witness on the stand, and by other witnesses, that the Pittsburg Railways Company operates a line of street cars upon double tracks, going upon the same streets but in opposite directions to each other, and called the Fifth, Shady and Penn avenue line; that the end of one of said lines is the corner of Eleventh street and Penn avenue in the city of Pittsburg and that line starts at said corner and travels eastwardly along Penn avenue to Shady avenue, along Shady avenue to Fifth avenue, along Fifth avenue to Cecil alley, along Cecil alley to Penn avenue, and along Penn avenue to the corner of Eleventh street, Eleventh street being the end of the line and the end of the trip; that the other of said lines begins at the corner of Grant street and Fifth avenue, and runs eastwardly along Fifth avenue to Shady avenue, along Shady avenue to Penn avenue, along Penn avenue to Cecil alley, along Cecil alley to Fifth avenue, and along Fifth avenue to

Grant street, Grant street being the end of the line and
the end of the trip; that for the convenience of the pub-
lic what is called a lap over exists on both lines, so that
people traveling on the first line may board the cars at
Grant street going west, or any point west of Grant street,
and make a continuous trip from such point without
paying an additional fare when Eleventh street is reached,
and passengers boarding the cars upon the other of said
lines may board the cars at Eleventh street, or any point
east of Eleventh street, and make a continuous trip
without paying an additional fare when the end of the
line and the end of the trip is reached; that the Pittsburg
Railways Company always had, and enforced a rule and
regulation to this effect, and that the prosecutor, by
crossing Fifth avenue at the point or place where he took
the car, could have taken a car on the same line, to wit,
the Fifth, Shady and Penn avenue line, going in the op-
posite direction to the car which he did take, and the trip
of which car would have taken him to his destination, to
wit, Eighteenth street and Penn avenue, during its trip,
and for one five cent fare.

Objected to, by counsel for the commonwealth, for the
same reasons as heretofore stated, and further that it
would be immaterial and irrelevant, because the actual
trip taken and intended by the prosecutor in this case
was the shortest distance he could traverse on the cars of
the Fifth, Shady and Penn avenue car line.

Objection sustained.   Exception. [6]

Counsel for defendant further proposed to prove by the
witness upon the stand, and other witnesses, that the
Pittsburg Railways Company, the company employing
the defendant, for years has regularly run the line on
Fifth avenue, passing the point or the place where the
prosecutor took the car, to wit, the Fifth, Shady and Penn
avenue line, which would have taken the prosecutor to
his destination on one trip, and for one fare of five cents.

Objected to, by counsel for the commonwealth, as
before.

Objection sustained.   Exception. [7]

Verdict of guilty, upon which the defendant was fined $5.00, and costs.

*Errors assigned* were (1, 2) instructions relating to the constitutionality of the Act of June 7, 1907, P. L. 453; (4–7) rulings on evidence, quoting the bill of exceptions.

*W. A. Challener*, with him *E. K. Trent* and *Clarence Burleigh*, for appellant.

*Warren I. Seymour*, with him *W. A. Blakeley*, for appellee.

OPINION BY ORLADY, J., October 10, 1910:

This case was argued at the same time as was Ashworth v. The Pittsburg Railways Company, ante, p. 326, in which an opinion is filed this day; and for the reasons therein given the first and second assignments of error in this case are overruled.

The Pittsburg Railways Company operates two lines of street cars, going in opposite directions, upon double tracks on the same streets, and called the "Fifth, Shady and Penn" line.  The track of each line is an irregular ellipse, having an east and west long axis of about five miles, and a continuous circuit of about ten miles in length.  There is no physical end to either circuit and for many years the company has fixed "ends of the line" for the purpose of exacting fares from passengers, and defining runs for the car crews.  The end of one line is at Eleventh street and Penn avenue, and cars move eastwardly, and by way of Penn, Shady, Fifth and Penn avenues to Eleventh street.  The end of the other line is at Grant street on Fifth avenue, and cars start and move westwardly by way of Fifth, Penn, Shady and Fifth avenues to Grant street.  These designated places are called the western ends of the line for passengers, or ends of the trip for the car crews; but for the convenience of the pub-

lic, the company established what are named "lap-overs" by which a passenger traveling on the first mentioned line may board a west-bound car on Fifth avenue at Grant street, or at any point west thereof, and make a continuous one-fare trip to any point west of the eastern end of the line (junction of Shady and Penn avenues) without paying an additional fare when Eleventh street (which is the technical end of the line) is reached, and a passenger boarding a west-bound car on Penn avenue at Eleventh street or at any point west of Grant street may have a continuous one-fare trip to any point west of the eastern end of the line, without paying an additional fare when Grant street (which is the technical end of the line) is reached.

The prosecutor entered a west-bound pay-as-you-enter car at Federal street—five squares east of Grant street—on Fifth avenue, intending to go to Eighteenth street—seven squares east of Eleventh street—on Penn avenue. He paid his fare of five cents on entering the car, and after the car had passed Eleventh street and Penn avenue the conductor made inquiry as to his destination, and then asked for another fare of five cents. This was refused by the passenger, when the conductor notified him that he must pay another fare of five cents or get off the car, and made some show of stopping the car to eject the prosecutor, when a friend volunteered the payment of the second fare and the passenger proceeded to his destination. The conductor was indicted under the Act of June 7, 1907, P. L. 453, for the fact that "he unlawfully did charge, demand and receive the sum of ten cents per trip and passage" from the prosecutor for a continuous ride in one car, and for the purpose of testing the constitutionality of the act, he was by direction of the court found guilty.

On the trial the court sustained objections to offers of testimony made by the defendant, which are embraced in the fourth, fifth, sixth and seventh assignments of error, and fairly raise the fourth statement of the ques-

tion involved, viz.: Is it lawful for a street passenger rail-
way company, operating a belt line exclusively within the
limits of a city, by a rule and regulation to designate a
certain point of said line as the end of the line,—the end
of the trip, and beyond which a passenger cannot ride with-
out paying an additional fare, and especially when all per-
sons, by taking a car on the same street going in an opposite
direction may reach his destination and have by that route
a continuous one-fare ride, before reaching the end of the
line.

As shown by the draft offered in evidence, the western
end of each line is outside of the part of the city that is
most congested by traffic and business, and the lap over
on each line will carry a passenger over twelve squares in
either direction through the busiest thoroughfares of the
city.

It is urged by the appellant, that had the evidence that
was excluded by the court been received it would have
been shown by undisputed facts that the rules and reg-
ulations in force by the company had been in existence
for many years. While the record does not disclose the
exact length of time the rule has been .in existence, the
witness on the stand at the time the offer was made tes-
tified that "he had been a conductor in the service of the
Pittsburg Railways Company for fourteen years," and
the offer was to show that the company had always had,
and had always enforced, the rule and regulation in ques-
tion, so that it is fair to assume that it had been in ex-
istence at least for that length of time.

It is contended by the commonwealth that even if the
rule and regulation is a necessary and reasonable one it
was not binding on the prosecutor or on the public, be-
cause the defendant did not offer to show notice of any
kind to the public. There is no statutory provision made
for giving such notice, and many methods have been
adopted by carriers to advise the public of such rules, as
by posters, newspapers, handbills, etc.; but, if the man-
ner or method is not defined and required by law, the

mere fact of publication does not of itself create implied or constructive notice: Weaver v. Craighead, 104 Pa. 288. The record does not disclose how long the prosecutor had used this line, or whether he knew of the rules, or made any inquiry of the conductor in regard thereto when he entered the car, but it does show that he was familiar enough with the situation to know that Eighteenth street was his destination, and that the car he boarded would take him to it, and he and the public knew that cars bearing the same sign were passing in opposite directions upon the same street, naturally with some advantages as to time and distance, and reasonably as to fare. As was said in Lake Shore, etc., R. R. Co. v. Rosenzweig, 113 Pa. 519: "No necessity has been shown for judicial enunciation that there is a legal presumption, or a fiction of law, that a person about to become a passenger, or has become a passenger on a railway, knows the rules and regulations of the railway company, . . . . in a proper sense he was bound to ascertain and know the regulations of the defendant entering into his contract, and he has no greater rights thereunder than if he had acquired actual knowledge of its terms."

There are very few facts which diligence cannot discover, and by reasonable diligence is meant, where there is some reason to awaken inquiry and direct diligence in a channel in which it would be successful: Maul v. Rider, 59 Pa. 167.

The argument of the commonwealth goes to the length to say that even if the prosecutor had actual notice of the rule, yet the defendant was rightly convicted because the rule was an arbitrary and unreasonable one. It must be admitted that the railways company has authority to define by a reasonable regulation the length of the trip to which the passenger is entitled for his fare. Surely this question could not be decided arbitrarily by the passenger? The rightful discretion must necessarily rest with the company. This passenger, according to the argument of the commonwealth, would be entitled

to board an east-bound car at Federal street and Fifth avenue and ride for a single fare the entire circuit of ten miles to go to High street which is but three squares west of Federal street on Fifth avenue. This we think would not be reasonable. While there is no physical end of either line, of right there should be a definite one for purposes of limiting passages and trip. Call it theoretic, ideal, arbitrary or necessary, the fact remains, that such a regulation is demanded by the very exigencies of the case. The important question is, is it a reasonable one and how shall it be determined?

The demand of the public for prompt and safe service, the length of the road, population, number of stops, hours of service, schedules, transfers, and a great variety of circumstances are to be considered in interpreting such a regulation.

There is marked conflict in the decisions of our sister states, but in all of them, it seems to be conceded that the carrier has the right to prescribe such reasonable rules and regulations as may be deemed fit and proper to meet the demand of the public for a safe and prompt service.

In our own state the proper tribunal to decide this question is the court and not a jury. Pittsburg, etc., Ry. Co. v. Lyon, 123 Pa. 140, is in point, in which case the Supreme Court holds "So far as the reasonableness of a given rule depends upon the existence of particular facts and circumstances, it is necessarily a question for the jury, under proper instructions from the court; but if the facts are undisputed, the question is a proper one for the court:" Old Colony R. R. Co. v. Tripp, 33 Am. & Eng. R. R. Cases, 488, and notes. As was said in Vedder v. Fellows, 20 N. Y. 126, 131: "There are strong reasons why the reasonableness of railroad regulations should be submitted to the court as a question of law rather than to the jury as one of fact. Ordinarily jurors are not aware, nor can they readily be made aware, of all the reasons calling for the rule, . . . . What one jury might deem an inconvenient rule, another might approve as judicious and

proper. There would be no uniformity. The facts of the case at bar being undisputed it was clearly the province of the court to say, as a matter of law, whether the regulation in question was reasonable or not."

There is no particular kind of evidence necessary to prove notice; any legal evidence that proves knowledge of the necessary facts is admissible. Even in the steam railroad cases it is held that all the terms of the contract of carriage are not embraced in the printed ticket, but in so far as they are not expressed they must be gathered from the rules and regulations of the company for running its trains; with the qualification that such rules and regulations must be reasonable and not contrary to the terms expressed, and that the burden is not on the company to show that the passenger had notice of their reasonable rules: Dietrich v. Penna. R. R. Co., 71 Pa. 432.

The guilt of the defendant depended upon his right to exact the second fare, and this, upon the right of the company to make the rule and regulation requiring its payment. The excluded evidence was relevant to that contention and should have been received with such other evidence as was pertinent to that inquiry. The fourth, fifth, sixth and seventh assignments of error are sustained.

The judgment is reversed, and a new trial awarded.